UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:22-cr-00201-WWB-LHP |
| ) | |
| EVAN EDWARDS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S MEMORANDUM ON THE VIABILITY *VEL NON*
OF RESTORATION PROCEDURES AND
APPROPRIATE FURTHER PROCEEDINGS**

COMES NOW, the Defendant, Evan Edwards, and in compliance with this Court's Order of August 3, 2023, [Dkt. 105] submits the following Memorandum of Law.

**MEMORANDUM OF LAW**

**ISSUES PRESENTED**

Whether, based on the report from the Bureau of Prisons [Dkt. 98, filed under seal], the restoration procedures set forth in 18 U.S.C. § 4241(d) apply; and

if the restoration procedures under 18 U.S.C. § 4241(d) do not apply, what further proceedings should occur in this case.[1]

## I. Procedural History

### A. Original Arrest

On September 18, 2020, the United States filed a criminal complaint against the Defendant and others alleging violations of 18 U.S.C. § 1546. <u>United States v. Edwards</u>, Case Number 6:20-mj-1673 (M.D. Fla. Orl. Div.). The Defendant was arrested on September 18, 2020. The United States sought, on the same day and by written motion, to dismiss the Complaint as to the Defendant and others. The United States' motion was granted the same day and the Defendant ordered released pursuant thereto.

### B. Current Prosecution

On December 7, 2022, a grand jury sitting in Orlando, Florida, returned a multi-count indictment against Mr. Edwards and his son, charging this Defendant with conspiracy to commit bank fraud, bank fraud, and visa fraud. [Dkt. 1]. Mr. Edwards was arrested on December 14, 2022. [Dkt. 10]. At his initial

---

[1] Contemporaneously herewith and in order to preserve the sealed nature of certain of the documents referred to herein as well as the confidentiality of certain medical records of the Defendant, the undersigned has filed a Motion to Seal Exhibits referred to in this Memorandum. The goal of the same is to present the issues and analysis necessary herein, and yet still preserve the sealed and confidential nature of said medical and sealed materials.

appearance, on December 16, 2022, the Court found that he was suffering from an "apparent medical issue" such that he was "not able to participate or consult with counsel." [Dkt. 21]. The Court further ordered that he be "committed to the custody of the United States Marshal for provision of <u>medical care</u>." <u>Id.</u> (emphasis added). Finally, the Court indicated that the Defendant's initial appearance would be conducted "when the Defendant is <u>medically</u> able to participate." <u>Id.</u> (emphasis added).

Thereafter, the Court conducted a series of hearings with respect to the Defendant, including a status conference on December 21, 2022 [Dkt. 27], an abortive initial appearance and arraignment on December 27, 2022 (by Zoom from Mr. Edwards' hospital room at ORMC) (later converted into a status conference as the Defendant was unable to participate) [Dkt. 33], a status conference re: competence/arraignment on December 28, 2022 [Dkt. 42], and a status conference re: health status of the Defendant on January 4, 2023 [Dkt. 48].

At the January 4, 2023, Status Conference, the Court determined that there was reasonable cause to believe that Mr. Evans was not competent to stand trial and directed that Ryan C. W. Hall, M.D., examine Mr. Edwards and report as to the Defendant's competency to proceed to trial. [Dkt. 50]. Dr. Hall's report was provided to the parties on January 17, 2023 (filed under seal), and Dr. Hall

opined—somewhat wide of the mark — on Mr. Edwards' capacity to stand trial. [Dkt. 58, filed under seal; Dkt. 61, p. 14:13-22].

As a result of the claimed inability of both the local Orange County, Florida, corrections facility and the Federal Bureau of Prisons to provide an adequate detention facility in which appropriate medical care could be afforded, Mr. Edwards was held for months at the Orlando Regional Medical Center. [Dkt. 61, pp. 5:2-14, 25-28]. From December 16, 2022, until March 17, 2023, while detained at ORMC, the Defendant was bound, shackled by wrist and ankle, to his hospital bed, with two (2) security officers present in his room.

On February 24, 2023, the Court entered an Amended Order denying without prejudice the Defendant's Motions for Detention Hearing [Dkt. 56] and to Prohibit Transfer [Dkt. 77], and committing Mr. Edwards to the custody of the attorney general for placement at a suitable facility to conduct a psychiatric or psychological examination to determine Mr. Edwards' competency to stand trial. The Court ordered him to be transferred to FMC Butner, due to his "extensive medical issues." [Dkt. 85, p. 6].

Between March 18, 2023, and May 11, 2023, Mr. Edwards was held at the Columbia Regional Care Center in Columbia, South Carolina, which provides medical care for inmates and detainees with complex medical issues. Mr.

Edwards was transported to and held for a competency evaluation by the Bureau of Prisons on or about May 11, 2023, until June 10, 2023, at the Federal Medical Center in Devens, Massachusetts [hereinafter "FMC Devens']. [Dkt. 98, pg. 1, filed under seal].

## II.     Defendants' Medical & Psychological History

### A.     Defendant's Near Death Medical Emergency

In July of 2022, Mr. Edwards suffered a medical emergency necessitating a six-week hospital stay, some of which was in the Intensive Care Unit at Advent Health New Smyrna Beach Hospital. See Exhibit A, Extract of Relevant Medical Records from Advent Health (Submitted Under Seal), pp. 000001-003. Mr. Edwards' family reported the incident to the hospitalist at Advent Health, and provided the symptoms Mr. Edwards was experiencing, as well as the events leading up to the same. See, e.g., Sealed Exhibit A, p. 000009.

Mr. Edwards' course of treatment involved addressing life-threatening medical issues, which are detailed in the medical records in Exhibit A. See, e.g., Sealed Exhibit A, p. 000001-000003 (although the medical records are neither a model of clarity nor organization, they reveal the serious, nearly life-ending conditions of which the Defendant was suffering). Id. at pp. 000001 – 003, 0009, 443, 651. At bottom and in layman's terms, Mr. Edwards suffered, inter alia,

severe brain damage. So poor was Mr. Edwards' prognosis at discharge that hospice care was appropriate. Id. at pp. 000001-003, 651.

### B. Defendant's Medical Condition At Arrest in This Case

At the time of his arrest in the instant case, Mr. Edwards exhibited "symptoms of shock" at the Orange County Jail. See Exhibit B, Extract of Relevant Medical Records from ORMC (submitted under seal) p. 673. This, when combined with the events surrounding his initial appearance in this Court, resulted in his admission to the Orlando Regional Medical Center in Orlando, Florida. [Dkt. 21]. Mr. Edwards' diagnoses at admission to ORMC reflected the ongoing seriousness of his medical condition. See, e.g., Exhibit B, p. 2. Mr. Edwards' chronic medical challenges and conditions were memorialized by the attending healthcare providers. Exhibit B, p. 17, 617.

The neurological evaluation indicated that he was disoriented other than as to his person and place. Exhibit B, p. 617. Further evaluation by hospital staff reflected Mr. Edwards' challenges with speech, swallowing food, and communication. See, e.g., Exhibit B, p. 93-94, 120-121, and 179-180. He required and still requires round-the-clock care to address his basic activities of

daily living[2] as well as ongoing medical monitoring and care.  Exhibit B, pp. 93-94, 179-180.  The psychiatric assessment was similarly dire.  Exhibit B, pp. 120-121.

Pursuant to this Court's Order [Dkt. 50], Ryan Hall, M.D., conducted a competency evaluation of the Defendant.  On January 8 and January 10, 2023, Ryan Hall, M.D., examined Mr. Edwards. [Dkt. 57].  Dr. Hall concluded that Mr. Edwards was not competent to stand trial for the reasons set forth in his report, which conclusion rests squarely on Mr. Edwards' physical and mental deficiencies stemming from brain damage.  [Dkt. 58, filed under seal].

After a lengthy and exhaustive assessment in a controlled facility [FMC Devens] from May 11, 2023, until June 10, 2023, United States Bureau of Prisons Forensic Psychologist, Miriam Kissin, Psy.D., authored the BOP's report which appears at Dkt. 98, pg. 8, filed under seal.  Of greatest relevance to the instant matter, the BOP report reveals why restoration efforts would not be effective for Mr. Edwards.  The Court's minutes of the status conference on August 3, 2023, reflect that the United States did not object to the findings in the Competency Report.  [Dkt. 104].

---

[2] The phrase "basic activities of daily living" include: ambulating, feeding, dressing, personal hygiene, continence and toileting. Peter F. Edemekong et al., *Activities of Daily Living*, NAT'L INST. HEALTH NAT'L LIBR. OF MED., https://www.ncbi.nlm.nih.gov/books/NBK470404/.

### III.  Legal & Factual Analysis

Congress passed the current version of 18 U.S.C. § 4241 subsequent to the United States Supreme Court's decision in <u>Jackson v. Indiana</u>, 406 U.S. 715 (1972).  In <u>Jackson,</u> the then-applicable legal framework under Indiana state law which allowed for indefinite confinement on account of a defendant's lack of competency to stand trial was found to violate equal protection of the laws and due process under the U.S. Constitution.

The statute provides that:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease of defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility --
>
> (1)   for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> (2)   for an additional reasonable period of time until--
>
>> (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>>
>> (B) the pending charges against him are disposed

8

>according to law;
>
>whichever is earlier.
>
>If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.
>
>18 U.S.C. § 4241(d) (2006).

On its face, the language of the first paragraph of 18 U.S.C. § 4241(d) states that after a finding of lack of competency at a hearing "the court shall commit the defendant to the custody of the Attorney General." The statement read on its own, without context, appears mandatory, mechanical, and indiscriminate. However, common sense demands that such a mandatory provision be modified by common sense and the unique facts of each case. Here, a slavish following of the statutory language results in an absurdity: the BOP has already resolved this issue.[3] A factually unnecessary endeavor to "restore" Mr. Edwards, given his irreversible physical and mental condition, would serve only to further punish him rather than provide any meaningful opportunity for his restoration. To that same end, a mandatory commitment renders meaningless the clear and unambiguous findings of the government's report, which concludes that

---

[3] It is of other material note that Mr. Edwards' general medical health is insufficient allow him to materially participate in what would be a second, needless assessment process, let alone in the underlying criminal proceeding.

9

Mr. Edwards is not an appropriate candidate for restoration proceedings. [Dkt. 98, p. 8, filed under seal].

The United States had taken the position that the mandatory language of Section 4241(d) has no limitation. Clearly, this position, taken to its logical conclusion, would tie a trial court's hands in the event a defendant, having been found incompetent, but who also lacks any brain activity—[a] metaphorical "vegetable" and who is unable to communicate, eat, understand, or handle the basic activities of daily living—to a mandatory period of "restoration." The uselessness of such an act is patent. Here, that is exactly what the United States argues should occur for Mr. Edwards.[4]

In support of its desired outcome, the United States relies upon United States v. Donofrio, 896 F.2d 1301 (11th Cir. 1990), for the proposition that such commitment for competency restoration is mandatory. In Donofrio, the defendant was initially determined incompetent to stand trial. However, the issue of permanency of the defendant's incompetency was not at issue in the district court, so the issue of restorability was not yet determined and is not addressed in

---

[4] It is of note that, to date, Mr. Edwards has been held by the government for eight (8) months. The delay and uncertainty caused by an indefinite period of detention are problematic and violate the defendant's fifth amendment rights. See United States v. Donnelly, 41 F. 4th 1102, 1106 (9th Cir. 2022) (ruling that pre-hospitalization confinement for eight months exceeded whatever period 18 U.S.C. § 4241(d) conceivably allowed and length of confinement must bear some reasonable relation to purpose of statute).

10

Donofrio. Id. at 1302-03.  In the instant case, the BOP report has resolved the issue of Mr. Edwards' restorability, factually distinguishing this case from Donofrio.  At bottom, no controlling authority addressing this unique fact pattern, appears to exist in this Circuit.

Cases from other Circuits of the United States Courts of Appeal finding the statutory requirement mandatory do not address the instant situation either. E.g., United States v. Magassouba, 544 F.3d 387, 410 (2d Cir. 2008) (stating that commitment for restoration determination exceeded four months and such erroneous hospitalization was harmless); United States v. Brennan, 928 F.3d 210, 211-12 (2d Cir. 2019) (ruling that only the district court can determine whether a defendant can regain competency, therefore in the absence of such a determination, commitment for restoration determination is constitutional).

The closest case, procedurally, to the instant matter is United States v. Shawar, 865 F.2d 856 (7th Cir. 1989).  There, the district court made a determination that, based upon the opinions of three separate doctors, the defendant was presently incompetent to stand trial and that the condition—mental retardation —would not change, such that the defendant will not be cured by further treatment. Id. at 858. The district court found the defendant not restorable to competency and granted the defendant's motion to dismiss the

charges. Id. The Seventh Circuit reversed, holding that the commitment for determination of restorability was mandatory. Id. at 861. Nevertheless, Mr. Edwards' situation is factually different from that of Shawar—Mr. Edwards received an in-depth evaluation by the BOP as to restorability already. Distinguishing facts in Shawar indicating the appropriateness of a restorability determination included language or cultural differences, lack of time for a thorough determination, and the provision of proper mental health care for the defendant.[5] Id. at 861. None of these considerations are present in Mr. Edwards' case. Finally, Mr. Edwards' physical condition is such that he could not stand a trial on the merits given the need for round-the-clock feeding and attendance to the consequences of the same.

  The United States Court of Appeals for the Eighth Circuit has also

---

[5] District Courts of other jurisdictions have held similarly to Shawar, based upon various distinguishable facts. See United States v. Lewis, 5 F. Supp. 3d 515, 526 (S.D.N.Y. 2014) (committing the defendant for competency restoration where she was a risk to community and had threatened a Federal Judge); United States v. Stanford, 769 F. Supp. 2d 1083, 1091 (S.D. Tex. 2011) (stating that the defendant was a flight risk and needed additional time in custody to withdraw from effects of drug addiction); United States v. Perez-Diaz, 797 F. Supp. 81, 82 n.1 (D. P.R. 1992) (committing the defendant for restoration to competency where facts showed his mental condition improved in a controlled environment due to substance abuse problem); cf. United States v. Sherman, 722 F. Supp. 504, 506 (N.D. Ill. 1989) (stating that commitment for restoration mandatory even where permanent harm from institutionalization is a risk).

addressed a nominally similar circumstance in United States v. Dalasta, 856 F.3d 549 (8th Cir. 2017).  The defendant in Dalasta suffered from epilepsy and had suffered a partial lobectomy of the brain, rendering him incompetent for trial and, in the opinion of at least three physicians, suffering from an irreversible brain injury.  Id. at 551.  His condition was "never going to change." Id. at 552.  Regardless of the fact that the injury was permanent, the court remanded the defendant to the custody of the Attorney General for a restorability determination. Id. at 555.

> Because Dalasta must rely on his elderly parents as care-givers, the court noted that the BOP assessment would be useful in determining 'how he will do in a structured environment when[n] his parents aren't an option and whether or not that has to be in a custodial situation or whether he might do well in a residential facility of some kind . . . The BOP are experts at that kind of analysis.'

Id. at 552.  The Eighth Circuit affirmed the mandatory competency restoration attempt, citing Shawar, supra.  Here, in contrast, the experts at the BOP have already resolved the issue before the Court.  Further, Mr. Edwards is not physically able to participate in restoration therapies.

Both Shawar and Dalasta deal with factual predicates materially different from the instant case.  These other cases each have some factual basis for concluding that commitment to the BOP for treatment would have some potential benefit to the defendant, regardless of whether each defendant's condition was

13

permanent and unchangeable. Across the board, the authorities marshalled herein involve a fact-bound analysis. Mr. Edwards' situation is factually distinguishable from the cases holding commitment for restoration treatment mandatory as a result of the conclusions of the BOP report. Restoration to competency treatment typically consists of training and therapy.[6] Such treatment, training, and therapy are useless to Mr. Edwards, a person who lacks cognition, understanding, and the ability to engage in proper social interaction. Clearly, Mr. Edwards is medically and physically incapable of benefiting from any such "treatment," making an attempt at restoration a useless act.

Finally, as the requirements of Section 4241(d) do not apply to Mr. Edwards, the question arises as to the necessity of further proceedings. Under the statutory scheme, "if it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 (dangerousness hearing)[.]" 18 U.S.C. § 4241(d). Consequently, at worst, there may be a need for a dangerousness

---

[6] Competency restoration treatment typically consists of two different group treatment settings. First is a basic competency restoration group, which is designed to present information on various legal topics to assist in preparation for return to court. Such treatment can also include the "Slater Method," a competency restoration approach developed by Wall, Krupp, an Guilmette for individuals who are intellectually disabled (typically a smaller group with specific start and end times). Barry W. Wall et al., *Restoration of Competency to Stand Trial: A training program for persons with mental retardation*, 31 J. AM. ACAD. OF PSYCH. L. 189-201 (2003).

14

determination, although the Defendant's medical condition would make any such determination a foregone conclusion that he is not dangerous.

### IV.   Conclusion

Further attempts at restoring Mr. Edwards' competency are the quintessential "useless act." As a result, the Court should not remand him for such attempts and should, at worst, conduct a dangerousness hearing under 18 U.S.C. § 4246, as well as, release Mr. Edwards to his family for ongoing care.

Respectfully submitted this 31st day of August, 2023.

s/A. Brian Phillips
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone:  (407) 872-0777
Facsimile:   (407) 872-0704
Email: Brian.Phillips@phillips-law-firm.com
Counsel for Evan Edwards

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on August 31ˢᵗ, 2023, I filed a copy of the foregoing with the Clerk of the Court via the CM/ECF system.  I further certify that all parties to this case are equipped to receive service of documents via that system.

s/A. Brian Phillips
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone:  (407) 872-0777
Facsimile:   (407) 872-0704
Email: Brian.Phillips@phillips-law-firm.com
Counsel for Evan Edwards
