UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:22-cr-201-WWB-LHP |
| | ) | |
| JOSHUA EDWARDS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT JOSHUA EDWARDS'S NOTICE
PURSUANT TO THE COURT'S FEBRUARY 21, 2024
ORDER AND HIS MOTION FOR PRETRIAL RELEASE**

Defendant Joshua Edwards ("Mr. Edwards"), by and through the undersigned counsel, hereby submits his notice in response to the Court's Order, dated February 21, 2024, requesting briefing on the issue of whether, given the certificate of restoration to competency (Doc. No. 123), the Court may proceed with the completion of all Rule 5 and Rule 11 proceedings, which would also include a detention hearing, or if the parties believe that such proceedings cannot go forward until all competency related proceedings are completed in full. *See* Doc. 132. Because Mr. Edwards believes that the Court can conduct Rule 5 and Rule 11 proceedings forthwith, including a detention hearing, Mr. Edwards hereby files his own separate notice, which includes a motion requesting that the Court immediately set pretrial release conditions pursuant to the Bail Reform Act

("BRA"), 18 U.S.C. § 3142.  In further support thereof, Mr. Edwards states as follows:

## STATEMENT OF FACTS

### A.    Relevant Procedural History

On December 7, 2022, a federal grand jury returned an indictment charging Mr. Edwards with non-violent fraud offenses, in violation of 18 U.S.C. § 1344, 18 U.S.C. § 1349, 18 U.S.C. § 1014, and 18 U.S.C. § 1546.  *See* Doc. 1.

On December 14, 2022, Mr. Edwards was arrested and had his initial appearance before the Court.  *See* Docs. 9, 14.  The U.S. Pretrial Services ("Pretrial Services") issued a report (hereinafter "Pretrial Services Report") confirming that Mr. Edwards has lived in the Middle District of Florida since 2018.  Specifically, he lived with his mother, sister, and father, who is also his co-defendant, in a home that the family owns in New Smyrna Beach, Florida.  Mr. Edwards's mother and sister were also present in the courtroom during the initial appearance, thereby demonstrating the family support that Mr. Edwards has.  *See* Doc. 14 at 6. Additionally, the Pretrial Services Report states that Mr. Edwards has no prior criminal convictions, that he suffers from autism and a learning disability, and that he cannot read or write very well.   Pretrial Services concluded that Mr. Edwards poses some risk of nonappearance based on his Canadian citizenship but that there

are "no known factors indicating that the defendant poses a risk of danger to the community."

At the initial appearance on December 14, 2022, prior defense counsel and the Court raised competency concerns with respect to Mr. Edwards.  Doc. 14 at 7-8.  At the conclusion of the hearing, the Court ordered that Mr. Edwards remain in the custody of the U.S. Marshals and appointed a local psychiatrist to conduct a competency evaluation of Mr. Edwards.  Doc. 14 at 8, 11; *see also* Doc. 19.  The Court did not hold any further proceedings in this matter, and did not conduct a detention hearing pursuant to the BRA.

After a series of competency evaluations, the Court found on April 28, 2023 that Mr. Edwards was not competent to proceed, pursuant to 18 U.S.C. §§ 4241(d) and 4247.  *See* Docs. 69, 71, 72, 96, 97.  Throughout this process, Mr. Edwards remained in custody, including a thirty-day placement at a Bureau of Prisons ("BOP") facility for one of the evaluations.  *See* Doc. 72.  As part of its finding that Mr. Edwards was not competent to proceed, the Court ordered him to be hospitalized for treatment at a suitable BOP facility for  "a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward."  Doc. 97 at 3; *see also* 18 U.S.C. § 4241(d)(1).

On January 19, 2024, a letter from BOP to the Court was filed on cm/ecf, indicating that Mr. Edwards did not arrive at a BOP facility for competency restoration until August 24, 2023, over three months from the date of the Court's finding that Mr. Edwards was not fit to proceed.  Doc. 119.  In this letter, the BOP requested additional time for its evaluator to complete a report detailing Mr. Edwards's competency status.  *Id.*  On this same date, the Court granted BOP's request and extended the deadline for the submission of the BOP evaluator's report as to whether Mr. Edwards would regain competency to proceed in the foreseeable future, to February 1, 2024.  Doc. 120.

On or about January 25, 2024, the BOP submitted to the Court, under seal, a forensic evaluation report, indicating that Mr. Edwards was fit to proceed in the case.  *See* Doc. 121.  The BOP also submitted under seal a certificate of restoration of competency to stand trial for Mr. Edwards.  *See* Doc. 123.

On February 8, 2024, at a status conference, the Court and the parties addressed the BOP's findings concerning Mr. Edwards's competency status. Docs. 124, 125.  At this hearing, prior defense counsel informed the Court that Mr. Edwards was contesting the BOP's conclusion that he was now competent to proceed in his case.  Doc. 125.  On this same date, the Court set a competency hearing for April 24, 2024 at 9:30 a.m., and set deadlines for the filing of certain

items related to Mr. Edwards's competency, including reports prepared by Mr. Edwards's retained experts. *Id.*

On February 14, 2024, prior defense counsel filed a motion to withdraw as Mr. Edwards's attorney. Docs. 126-128.

On February 21, 2024, the Court held a hearing on prior defense counsel's motion to withdraw. Doc. 130. At this hearing, the Court granted the motion to withdraw and appointed the undersigned to represent Mr. Edwards. Docs. 130, 131. At this hearing, Mr. Edwards personally addressed the Court and asked to be released from custody.

On this same date, the Court entered an Order directing the parties to address the issue of whether Rule 5 and Rule 11 hearings can be completed, including a detention hearing, based on the current posture of Mr. Edwards's competency status. Doc. 132.

As of this filing, Mr. Edwards, a 30-year-old man charged with non-violent fraud offenses who has no criminal history, has been in custody for one year, two months, and 19 days, without a finding from this Court that he should be detained under the BRA. In sum, Mr. Edwards has had the misfortune of being detained the entire time that his competency status has been in flux. His prolonged detention in this case was made all the more difficult because of his learning disability and autism, which, in turn, has made him particularly vulnerable in a

jail setting.   Notably, Mr. Edwards's co-defendant, who has had his own competency issues since the initial appearance, was released on conditions on September 12, 2013.  *See* Doc. 114.

As set forth herein, the undersigned believes that the Court can proceed with Rule 5 and Rule 11 hearings at this juncture.  At a minimum, the Court should set reasonable pretrial release conditions for Mr. Edwards under the BRA. Specifically, Mr. Edwards requests the same pretrial release conditions as his co-defendant.  *See* Doc. 114.

## <u>MEMORANDUM OF LAW</u>

### A.   *Legal Standards*

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).   "It is well-established that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  *Jones v. United States*, 463 U.S. 354, 361 (1983); *United States v. Magassouba*, 544 F.3d 387, 407 (2d Cir. 2008)

Once a court finds a defendant to be incompetent, as was the case here on April 28, 2023, the Court is obligated to "commit the defendant to the custody of the Attorney General . . . for . . . a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that

6

in the foreseeable future he will attain the capacity to permit the proceedings to go forward."  18 U.S.C. § 4241(d).  Although not necessarily relevant to the present issue before the Court, it is notable that the Attorney General kept Mr. Edwards in custody for longer than four months before reporting to the Court that the BOP had determined that Mr. Edwards was competent to proceed.   Specifically, the Court committed Mr. Edwards to the Attorney General on April 28, 2023.  *See* Doc. 97.  Thereafter, the Attorney General did not transport Mr. Edwards to a suitable facility until August 24, 2023, and did not provide a report on his competency status until January 25, 2024.  *See* Doc. 119.  Thus, even if the start date of the commitment period was August 24, 2023, the Attorney General took longer than four months to determine "whether there is a substantial probability that in the foreseeable future" Mr. Edwards would regain competency.  The undersigned only raises this point to demonstrate that Mr. Edwards has already spent far more time in custody than the competency statute permits.  Moreover, Mr. Edwards's prolonged incarceration took place without a finding from the Court that detention is appropriate under the BRA.

### B.   *The Court Can Conduct Pretrial Proceedings At This Time*

With regard to the ultimate issue of whether the Court can conduct Rule 5 and Rule 11 proceedings, including a detention hearing prior to the competency hearing in this case, there appears to be a dearth of applicable case law on this

7

point.   The undersigned acknowledges that in a prior Order entered in Mr. Edwards's co-defendant's case, this Court found that because a detention hearing was a "critical stage of the proceedings" such a hearing could not be held until the competency proceedings were completed.  *See* Doc. 85 at 5.   In support of this finding, the Court relied on opinions from other circuits and districts, as well as district court opinions from the Middle District of Florida.  *Id.*

Respectfully, the undersigned asserts that the Court can and should conduct Rule 5 and Rule 11 proceedings, including any hearings the Court deems necessary under the BRA, before the competency hearing which is not set to occur until April 24, 2024.  *See* Doc. 125.   Persuasive legal authority supports the undersigned's position.   The Second Circuit has rejected the premise that an incompetent defendant is exempt from detention proceedings under the BRA.  *See Magassouba*, 544 F.3d at 413 (holding that even though § 4241(d) proceedings were ongoing, a defendant "remains pending trial [and the Bail Reform Act remains applicable] through the completion of § 4241 proceedings.").   The defendant in *Magassouba* had previously been detained in a presumption case and argued that his incompetency made him exempt from the Court's detention order because he was no longer "pending trial," under 18 U.S.C. § 3142(a).  *Id.*   The *Magassouba* stated that:

> While an incompetent criminal defendant cannot be placed 'on trial' consistent with due process, there is no similar constitutional bar to

8

his remaining 'pending trial' while competency proceedings are resolved. In *Jackson v. Indiana*, [406 U.S. 715, 740-41 (1972),] the ***Supreme Court specifically held that the due process proscription on putting an incompetent defendant 'on trial' did not preclude a court from conducting certain pretrial proceedings in his criminal case.*** (noting that states were not precluded from 'allowing at a minimum, an incompetent defendant to raise certain defenses such as insufficiency of the indictment, or make certain pretrial motions through counsel that did not require personal participation of the defendant[.]'). A court necessarily conducts such proceedings pending a defendant's trial. Because we conclude that Magassouba remains pending trial through the completion of § 4241 proceedings, we necessarily reject his argument that he was no longer 'pending trial' after the October 13, 2004 finding of incompetency and, therefore, no longer detainable under § 3142.

*Id.* (internal citations added and omitted) (emphasis added).

In *United States v. Smith*, 764 F. Supp. 2d 541, 542 (W.D.N.Y. Feb. 9, 2011), a district court opinion that bears some factual similarity to Mr. Edwards's predicament, a defendant presented mental competency concerns at his initial appearance. After an examination and a competency hearing, the district court in *Smith* found that the defendant was incompetent and entered a commitment order committing *Smith* to the custody of the Attorney General for hospitalization and treatment at a suitable facility. *Id.* Thereafter, the *Smith* defendant remained at a local jail for over ten weeks because the BOP could not find a bed for him at a suitable facility. *Id.* at 542-543, 544-545. Eventually, the defendant in *Smith* filed a motion for his release, which the district court entertained. *Id.* at 542-543.

The *Smith* court found that the government failed to provide a satisfactory explanation as to why the defendant had not been transported to a BOP hospital and held that "unless [the defendant] poses a danger to the community, defendant's continued commitment violates his right to due process, and that he should be released, with or without conditions." *Id.* at 545. The court in *Smith* also explicitly held that a detention hearing under 18 U.S.C. § 3142 could proceed, despite the defendant's unresolved competency status, and set a hearing to determine if release conditions could be imposed. *Id.*

Here, Mr. Edwards requests that the Court follow the persuasive logic and reasoning of the *Smith* and *Magassouba* opinions. Mr. Edwards has already been held in custody for "a reasonable period of time necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future," without any finding whatsoever that he poses a danger to the community or a serious risk of flight. In sum, the undersigned believes that the Court is in a position to determine whether reasonable conditions of release can be imposed for Mr. Edwards pursuant to the BRA. Stated another way, Mr. Edwards's case remains "pending trial" for BRA purposes, and the Court can conduct "certain pretrial proceedings in his criminal case." *See Magassouba*, 544 F.3d at 413 (citing *Jackson*, 406 U.S. at 740-41). The undersigned asserts that such "pretrial proceedings" would include completing the Rule 5 and Rule 11

10

proceedings, including conducting hearings and entering orders that the Court deems necessary and appropriate under the BRA.

Anecdotally, the undersigned is aware of other cases where defendants were permitted to remain at liberty on pretrial release conditions imposed under the BRA while competency proceedings under 18 U.S.C. § 4241 were ongoing.  For example, in *United States v. James Larry Wilborn*, Case No. 6:13-cr-00253-RBD-GJK (M.D. Fla. Jun. 1, 2015), the Court entered a commitment order on June 1, 2015, directing the defendant who had been on pretrial release conditions to surrender himself to the custody of the U.S. Marshals to be transported to his designated BOP facility for competency restoration.  *Id.* at Docs. 8, 24, 31, 111.  At the conclusion of the competency restoration process, the *Wilborn* court entered an order on October 20, 2015, directing the prompt transport of the defendant from his BOP facility back to his residence within the Middle District of Florida.  *Id.* at Doc. 118.  Eventually, on October 30, 2015, the defendant in *Wilborn* was released on conditions of supervised release.  *Id.* at Doc. 126.  *See also United States v. Defario Antoine Evans*, Case No. 6:19-cr-00116-PGB-DCI (M.D. Fla. Oct. 24, 2019), Doc. 40, Doc. 48, Doc. 49 (granting the defendant's motion to remain on conditions of pretrial release and permitting him to self-report to his designated BOP facility for restoration).  Indeed, Mr. Edwards's own co-defendant remains out on pretrial

11

release conditions, despite a finding by the Court that the co-defendant is not fit to proceed in this case.  *See* Docs. 114, 117.

The undersigned does not see a meaningful distinction between the posture of the co-defendant's competency status and Mr. Edwards's situation.   Both defendants are currently in an unfit to proceed status, although Mr. Edwards has at least completed his restoration treatment.  Despite the similarities in their status, Mr. Edwards remains detained without a finding by the Court under the BRA, while his co-defendant was granted pretrial release.

### C. *Pretrial Release Conditions Should Immediately Be Set Under The Bail Reform Act*

#### 1. *A Detention Hearing Cannot Proceed And Mr. Edwards Must Be Immediately Released*

Turning to the merits of Mr. Edwards's request for pretrial release, in order to ensure that pretrial detention was the exception and not the rule, Congress limited the categories of cases eligible for pretrial detention to those listed in 18 U.S.C. § 3142(f)(1): crimes of violence, Class A felonies, drug-trafficking offenses, offenses that involve minor victims, firearms, destructive devices, or failing to register.   Congress excluded the type of fraud offenses that Mr. Edwards is charged with from the foregoing list.

Because Congress excluded the fraud offenses in this case from subsection (f)(1), the only one mechanism to even hold a detention hearing in Mr. Edwards's

case is if the government can clear the evidentiary threshold under (f)(2). *See* 18 U.S.C. § 3142(f)(2)(A)-(B).  Under subsection (f)(2), the Court performs a threshold inquiry that asks two questions: (1) Is there a "serious risk" that the defendant "will flee," i.e., intentionally "avoid court proceedings?"  or (2) Is there a "serious risk" the defendant will obstruct justice, threaten witnesses, or threaten jurors? *See The Bail Reform Act of 1984 – Fourth Edition* at 18 ("The inquiry under (f)(2), however, is not categorical but rather requires an individualized assessment of the particular defendant—whether this defendant is a serious risk to flee. . .") (emphasis in original); *see also* 18 U.S.C. § 3142(f)(2)(B).

Six courts of appeals agree that it is improper to hold a detention hearing unless the government invokes one of the factors listed in 18 U.S.C. § 3142(f). *See, e.g., United States v. Ploof,* 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman,* 837 F.2d 48, 48–49 (2d Cir. 1988); *United States v. Himler,* 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Byrd,* 969 F.2d 106, 109 (5th Cir. 1992); *United States v. Twine,* 344 F.3d 987 (9th Cir. 2003); *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999).

In order to clear the evidentiary threshold imposed by (f)(2), the government must present "concrete information", not "mere conclusory assertions." *United States v. White,* 2021 WL 2155441 at *7 (M.D. Tenn. May 27, 2021) (noting that, under (f)(2)(A), courts look for "concrete information proffered by the

Government, and not mere conclusory assertions"); *see also Himler*, 797 F.2d at 162 ("Mere opportunity for flight is not sufficient grounds for pretrial detention.").

Danger plays no role in the threshold inquiry under (f)(2)(A).   *Twine*, 344 F.3d at 987 ("We are not persuaded that the [BRA] authorizes pretrial detention without bail based solely on a finding of dangerousness. This interpretation of the Act would render meaningless 18 U.S.C. 3142(f)(1) and (2).").  Accordingly, if the government is unable to adequately demonstrate that the defendant presents a serious risk of flight, obstruction, or threats to witnesses and jurors, then the defendant "must be released, notwithstanding alleged dangerousness."  *Id.* Moreover, the inquiry must be performed independently of the Court's assessment as to whether release conditions can and should be fashioned.  *Id.* Meaning, even if the Court does not believe that the defendant will succeed in complying with release conditions, the BRA may nevertheless compel release under (f)(2) based on the Government's inability to demonstrate a serious risk of flight or obstruction.

The government should only be able to meet its burden in "extreme and unusual cases."  *See Bail Reform Act of 1983: Rep. of the Comm. On the Judiciary*, S. Rep. 98-225 (1983) (noting the First Circuit's decision in *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978) accurately captures how often the serious flight risk standard under (f)(2)(A) gets satisfied: in "extreme and unusual" cases); *see also*

*United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant."); *United States v. Runsdorf*, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) (finding that the government must establish "a heightened likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense" (emphasis added)).

If a detention hearing is not authorized, then the Court must immediately release the defendant on their personal recognizance or on such conditions as the Court determines are the least restrictive necessary to reasonably assure the appearance of the defendant and the safety of the community.

Here, the government cannot present any evidence suggesting that Mr. Edwards presents a "serious risk" of obstructing justice or threatening witnesses or jurors.   Further, while Pretrial Services found some risk of nonappearance in the Pretrial Services Report, there is insufficient evidence to conclude that there is a "serious risk" that Mr. Edwards "will flee."  18 U.S.C. § 3142(f)(2)(B).

Ordinary "risk of flight" is insufficient under § 3142(f) for the Court to move forward with a full-blown detention hearing. By its plain language, § 3142(f)(2)(A) permits detention and a hearing only when there is a "serious risk that [the defendant] will flee."  There is some risk of nonappearance and potentially some risk of flight in every criminal case; "serious risk" of flight means something more.

15

*See White*, 2021 WL 2155441, at *10 (recognizing that "serious flight risk" is "narrower" than "flight risk" and is "distinct from 'risk of non-appearance'"). According to a basic canon of statutory interpretation, the term "serious risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g., Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretative canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citation omitted)). Thus, a defendant "may be detained only if the record supports a finding that he presents a serious risk of flight." *Himler*, 797 F.2d at 160; *see also United States v. Robinson*, 710 F. Supp. 2d 1065, 1088 (D. Neb. 2010) (criticizing the government for failing to present evidence of "serious risk" of flight at the Initial Appearance and saying "no information was offered to support [the] allegation"); *White*, 2021 WL 2155441, at *7 (holding that "a court may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue").

The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. *Id.* (holding that a "case involves a 'serious risk of flight,' as opposed to a mere risk of non-appearance, if it involves a serious risk that the defendant intentionally will

avoid court proceedings").  Notably, risk of flight is also not the same as risk of nonappearance, *see id.* at *10, and a defendant should never be detained as a "serious risk" of flight when the risk of flight or nonappearance can be mitigated by conditions of release.

Further, the potential penalty in this case is not a legitimate basis for finding a serious risk of flight. There is no evidence that Congress intended courts to *de facto* detain any client facing a long prison sentence. Indeed, many federal defendants face long sentences—being a defendant in a run-of-the-mill federal case cannot possibly be an "extreme and unusual circumstance." Relatedly, if a finding of serious risk of flight under § 3142(f)(2) could be justified solely by the seriousness of a given charge and its penalty, Congress could have chosen to list the charge in § 3142(f)(1). *See United States v. Lopez-Chilel*, 2022 WL 1178503, at *3 (E.D. Mich. Apr. 20, 2022); *White*, 2021 WL 2155441, at *13 ("[F]ederal crimes are generally serious with serious penalties, and yet under the Bail Reform Act release is generally favored in federal criminal cases—as it should be, since locking up persons prior to conviction should be something of a last resort. And in the realm of federal crimes, the seriousness here by no means stands out."); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) ("[I]t is generally accepted that more than evidence of the commission of a serious crime and the fact of a potentially long sentence is required to support a finding of serious risk of flight.

17

A mere theoretical opportunity for flight is not sufficient grounds for pretrial detention." (citation omitted)).  Additionally, the mere fact that Mr. Edwards is charged with an economic crime likewise does not render him a serious risk of flight.

Mr. Edwards's Canadian passport and citizenship may present some risk of nonappearance, as indicated by the Pretrial Services Report, however, the government certainly cannot say that there is a "serious risk" that he will willfully evade the proceedings in this case.  Mr. Edwards is an autistic adult incapable of living apart from his immediate family, all of whom have lived in the Middle District of Florida for approximately six years.   The family owns the home they live in within the district.  Mr. Edwards's co-defendant, who is also his father, has been on pretrial release conditions since September of last year, presumably with no issues.  This is a strong indicator that Mr. Edwards cannot and will not pose any "serious risk" of flight.  Moreover, any ordinary risk that exists here can be ameliorated by imposing the same conditions of release set in the co-defendant's case, which included a third-party custodian and a passport surrender.

Based on the foregoing, and because none of the factors set forth in § 3142(f)(2) are present in this case, a full-blown detention hearing wherein the Court can entertain the government's arguments for detention is not authorized,

and Mr. Edwards should be immediately released under the same conditions as his co-defendant.

### 2.   Even If A Detention Hearing Is Held, Pretrial Release Conditions Should Be Set

If the Court finds that a detention hearing is authorized, the Court must move to the second step of the analysis and determine whether any condition or combination of conditions will reasonably assure the defendant's appearance as required.  *See* 18 U.S.C. § 3142(e).  The Court must weigh the factors listed at 18 U.S.C. § 3142(g) while keeping in mind that "doubts regarding the propriety of release be resolved in favor of the defendant."  *See United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).  The principle that doubts be resolved in the defendant's favor is reflected in the burden of proof: there must be clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community, and there must be a "clear preponderance" of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance.  *See Lopez-Valenzuela v. Cty. of Maricopa*, 719 F.3d 1054, 1065 (9th Cir. 2013).

A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th

19

Cir. 1986) (quoting § 3142(e)).  Here, the Court can certainly fashion conditions of release that will "reasonably assure" both the safety of the public and Mr. Edwards's future appearances in this case.

As stated in the Pretrial Services Report, Mr. Edwards presents no real danger to the community.  As to his risk of nonappearance, the Court can reasonably address this concern by imposing the same pretrial release conditions that were set for Mr. Edwards's co-defendant, including a surrender of his Canadian passport and a travel restriction.  Notably, the BRA does not require the Court to impose conditions that absolutely guarantee an outcome.  This is so because "[s]ection 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight."  *Chen*, 820 F. Supp. at 1208; *see also United States v. Orta*, 760 F. 2d 887, 891 n.17 (8th Cir. 1985) (en banc) (holding that ". . . the district court erred in interpreting the 'reasonably assure' standard set forth in the statute as a requirement that release conditions 'guarantee' community safety and the defendant's appearance.").

Here, the government cannot meet its high burden of proving by clear and convincing evidence that there are no release conditions for Mr. Edwards that will reasonably assure the safety of the community.  Similarly, the government will not prove by a preponderance of the evidence that there are no conditions that would

reasonably assure Mr. Edwards's future appearance in court, especially if the Court requires him to comply with the conditions of release requested herein.

> **3.** **Statistics Showing that It Is Extraordinarily Rare for Defendants on Bond to Flee or Recidivate Further Demonstrate that Conditions of Release Will Reasonably Assure Appearance and Safety**

AO Statistics further support that it is not necessary to detain Mr. Edwards to meet the primary goals of the BRA, which are to "reasonably assure" appearance in court and community safety. 18 U.S.C. § 3142(e). In 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new crimes on bond.[1] Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[2] Even in districts that release two-thirds of all

---

[1] App. 1, AO Table H-15 (Sept. 30, 2022). These high compliance rates have remained remarkably consistent over time, both before and after the pandemic. *See, e.g.*, Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide appearance rate of 99% and non-rearrest rate of 98%).

[2] The data showing near-perfect compliance on bond is illustrated in the figure below. Siegler, *supra* note **Error! Bookmark not defined.**, at 25 fig.4. The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending September 30, 2021. *See* App. 2, AO Table H-14A (Sept. 30, 2021), https://perma.cc/CYV5-3TZ6. The failure-to-appear and rearrest rates for these districts were calculated using App. 1, AO Table H-15. With regard to flight, the ten federal districts with the lowest release rates (average 20.00%) have an average failure-to-appear rate of 1.6%, while the ten districts with the highest release rates (average 64%) have an *even lower* failure-to-appear rate of 1.1%. *See* App. 1; App. 2. With regard to recidivism, the ten districts with the lowest release rates have an average rearrest rate on bond of 0.8%, while the ten districts with the highest release rates have an average rearrest rate of 1.1%. *See* App. 1; App. 2.

federal defendants on bond, just 1% fail to appear in court and 1% are rearrested while released.[3]

In addition, as the federal Probation and Pretrial Services Office recently highlighted, release rates rose slightly during the pandemic but failure-to-appear and rearrest rates did not increase.[4] Release rates increased from 25% in 2019 to 36% in 2021 but "the rates at which people on pretrial release failed to appear in court or were rearrested remained extremely low."[5]

In sum, Mr. Edwards must be released because the government cannot show that he would be among the approximately 1% of defendants who fail to appear in court or are rearrested on bond. Detaining Mr. Edwards without such evidence violates his constitutionally protected liberty interest.

## CERTIFICATION OF CONFERRING WITH OPPOSING COUNSEL

The undersigned hereby certifies that he has conferred with opposing counsel about the instant notice and motion, which seeks pretrial release, and opposing counsel objects to the relief sought herein.

---

[3] *See* App. 1; App. 2.
[4] *Id.* at 246 n.42.
[5] *Id.*

## CONCLUSION

WHEREFORE, the Defendant, Joshua Edwards, requests that this Court move forward with Rule 5 and Rule 11 proceedings, and immediately enter an Order setting pretrial release conditions for the defendant.

Respectfully submitted on this 28th day of February, 2024.

s/Andrew C. Searle
**ANDREW C. SEARLE, ESQ.**
Florida Bar No.  0116461
**SEARLE LAW P.A.**
200 East Robinson Street, Suite 1150
Orlando, Florida 32801
Telephone: 407-952-0642
Email: andrew@searle-law.com
Attorney for Defendant Joshua Edwards

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on  February 28, 2024, I filed a copy of the foregoing with the Clerk of the Court via the CM/ECF system. I further certify that all parties to this case are equipped to receive service of documents via that system.

s/Andrew C. Searle
**ANDREW C. SEARLE, ESQ.**
Florida Bar No.  0116461
**SEARLE LAW P.A.**
200 East Robinson Street, Suite 1150
Orlando, Florida 32801
Telephone: 407-952-0642
Email: andrew@searle-law.com
Attorney for Defendant Joshua Edwards