UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,          )
                                   )
      Plaintiff,                   )
                                   )
v.                                 )          Case No. 6:22-cr-201-WWB-LHP
                                   )
JOSHUA EDWARDS,                    )
                                   )
      Defendant.                   )
_____)

## DEFENDANT JOSHUA EDWARDS'S PRE-HEARING BRIEF REGARDING UPCOMING COMPETENCY HEARING

Defendant Joshua Edwards ("Mr. Edwards"), by and through the undersigned counsel, hereby submits a pre-hearing brief setting forth factual and legal issues that are relevant to the defense at the competency hearing set for July 10, 2024 at 9:30 a.m. (Doc. 187).   In support thereof, Mr. Edwards states as follows:

## STATEMENT OF FACTS

### A.     Relevant Procedural History

On December 7, 2022, a federal grand jury returned an indictment charging Mr. Edwards with various fraud offenses, in violation of 18 U.S.C. § 1344, 18 U.S.C. § 1349, 18 U.S.C. § 1014, and 18 U.S.C. § 1546.  *See* Doc. 1.

On December 14, 2022, Mr. Edwards was arrested and had his initial appearance before the Court.  *See* Docs. 9, 14.  At the initial appearance, prior

defense counsel and the Court raised competency concerns with respect to Mr. Edwards.   Doc. 14 at 7-8.   At the conclusion of the hearing, the Court ordered that Mr. Edwards remain in the custody of the U.S. Marshals and appointed a local psychiatrist to conduct a competency evaluation of Mr. Edwards.   Doc. 14 at 8, 11; *see also* Doc. 19.

After a series of competency evaluations, the Court found on April 28, 2023 that Mr. Edwards was not competent to proceed, pursuant to 18 U.S.C. §§ 4241(d) and 4247.   *See* Docs. 69, 71, 72, 96, 97.

On or about January 25, 2024, the Bureau of Prisons ("BOP") submitted to the Court, under seal, a forensic evaluation report, indicating that Mr. Edwards was fit to proceed in the case.   *See* Sealed Doc. 121.   The BOP also submitted under seal a certificate of restoration of competency to stand trial for Mr. Edwards.   *See* Sealed Doc. 123.

On February 8, 2024, at a status conference, the Court and the parties addressed the BOP's findings concerning Mr. Edwards's competency status. Docs. 124, 125.   At this hearing, prior defense counsel informed the Court that Mr. Edwards was contesting the BOP's conclusion that he was now competent to proceed in his case.   Doc. 125.

On February 14, 2024, prior defense counsel filed a motion to withdraw as Mr. Edwards's attorney.   Docs. 126-128.

On February 21, 2024, the Court held a hearing on prior defense counsel's motion to withdraw. Doc. 130. At this hearing, the Court granted the motion to withdraw and appointed the undersigned to represent Mr. Edwards. Docs. 130, 131.

On April 2, 2024, the undersigned filed his own motion to withdraw as Mr. Edwards's counsel, after conferring with the Florida Bar ethics hotline as well as the U.S. Courts, Defender Services Office Training Division's CJA hotline. Doc. 146.

On April 8, 2024, the Court held a hearing on the undersigned's motion to withdraw. Doc. 150. At this hearing, the Court permitted the undersigned to address the Court *in camera*, outside the presence of the government, so that the undersigned could provide the basis for his motion to withdraw. At the conclusion of the hearing, the Court denied the motion to withdraw but agreed to reschedule the competency hearing. *See* Doc. 151.

On April 16, 2024, the undersigned formally retained Dr. Randy K. Otto ("Dr. Otto") to evaluate Mr. Edwards.[1]

---

[1] Prior defense counsel had previously retained Dr. Melvin Pagan-Gonzalez ("Dr. Pagan-Gonzalez") to conduct a competency evaluation of Mr. Edwards. *See* Doc. 179. The undersigned has not provided any reports from this expert to either the government or the Court because the undersigned will not be relying on the opinions of Dr. Pagan-Gonzalez at the competency hearing.

Thereafter, substantial efforts were made to have Mr. Edwards evaluated by Dr. Otto. *See* Docs. 179, 201. Despite these efforts, Dr. Otto was unable to render an opinion as to Mr. Edwards's current competency status. *See* Sealed Doc. 178; Docs. 179, 201. Therefore, the undersigned will not be relying on testimony or a report from Dr. Otto or any other defense retained expert at the upcoming competency hearing, which is currently set for July 10, 2024. Doc. 187.

## MEMORANDUM OF LAW

### A.    *Legal Standards At Competency Hearing*

The Due Process Clause of the Fifth Amendment prohibits courts from trying and convicting mentally incompetent defendants. *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975); *Pate v. Robinson*, 383 U.S. 375, 384-86 (1966); *United States v. Mason*, 52 F.3d 1286 (4th Cir. 1995). The legal test for competency is whether the defendant has "***sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding***" and "a rational as well as factual understanding of the proceedings against him." *United States v. Rahim*, 431 F.3d 753, 760 (11th Cir. 2005) (citation and internal quotation marks omitted) (emphasis added). Moreover, pursuant to a statutorily prescribed standard, a person is incompetent to stand trial if "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him

or to assist properly in his defense." 18 U.S.C. § 4241(d).  The preponderance of the evidence standard applies at a competency hearing.  *Id.*  This standard requires the factfinder to find "that the existence of [the] fact is more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970). The defendant's competency is an ongoing inquiry, and he must be competent at all stages of the trial. *Rahim*, 431 F.3d at 759.  The same competency standard applies to a defendant who wishes to plead guilty rather than stand trial. *United States v. Rodriguez*, 751 F.3d 1244, 1252 (11th Cir. 2014).

In making a competency determination, the Court may consider a number of factors, including the defendant's behavior in the courtroom, evidence of irrational behavior, and any prior medical opinions as to competence. *See Drope*, 420 U.S. at 180.  Similarly, the Eleventh Circuit has permitted the Court to consider, *inter alia*, a defendant's behavior and statements in open court and previous psychological evaluations. *See Rahim*, 431 F.3d at 759; *Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996).  Evidence of incompetency need not be in the form of admissible evidence. *See Rahim*, 431 F.3d at 759.  Moreover, "[b]ecause legal competency is primarily a function of [a] defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect." *Singletary*, 87 F.3d at 1288.

**B.**     *Burden of Proof At Competency Hearing*

Mr. Edwards asserts that the burden falls on the United States to show by a preponderance of the evidence that he is competent to stand trial. *See United States v. Teague*, 956 F.2d 1427, 1432 & n.10 (7th Cir. 1992); *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991); *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989); *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987); *but see United States v. Allen*, No. 10-80175-CR, 2011 U.S. Dist. LEXIS 108094, 2011 WL 4352793, at *58 (S.D. Fla. Aug. 26, 2011) (discussing the circuit split on the issue of which party bears the burden of proof as to competency but ultimately placing the burden on the government to prove competency because this "determination is not dependent upon the allocation of the burden since the evidence is not in equipoise").

In a relatively recent case in this district, the government conceded that the burden rested with it to prove, by a preponderance of the evidence, that a defendant's competency to stand trial had been restored.  *United States v. Madison*, No. 6:17-cr-15-Orl-37LRH, 2020 U.S. Dist. LEXIS 244730, 2020 WL 8461574, at *7-8 (M.D. Fla. Oct. 29, 2020), report and recommendation adopted, No. 6:17-CR-15-ORL-37LRH, 2020 U.S. Dist. LEXIS 244034, 2020 WL 7768460 (M.D. Fla. Dec. 30, 2020); *see also United States v. Cabrera*, No. 07-20760-CR, 2008 U.S. Dist. LEXIS 44724, 2008 WL 2374234, at *6 (S.D. Fla. June 6, 2008) ("[I]f there is an adjudication of incompetency, and the defendant is committed to the Attorney General . . . the

burden of persuasion shifts; i.e., the court must find by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.").

### C.   Consideration of Expert Opinions At Competency Hearing

As noted, a district "court [i]s justified in relying on its own observations" as part of determining whether a competency examination or hearing is required. *United States v. Battle*, 613 F.3d 258, 263 (D.C. Cir. 2010) (quoting *Drope*, 420 U.S. at 180). While the Court may consider expert testimony in determining competency, the Court is free to assign whatever weight the Court determines is due to such testimony. *Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005). In fact, it is "well-settled" that expert opinions on the issue of competency are not binding on the trier of fact, "if there is reason to discount it." *United States v. Izquierdo*, 448 F.3d 1269, 1279 (11th Cir. 2006) (citing *Strickland v. Francis*, 738 F.2d 1542, 1552 (11th Cir. 1984)).

## RELEVANT FACTUAL ISSUES

### A.   Behavior And Demeanor At Initial Appearance

From the outset, Mr. Edwards's in-court behavior and demeanor was wholly consistent with an incompetent defendant, i.e., an individual with no ability to consult with counsel to a reasonable degree of rational understanding.

Moreover, he exhibited behavior suggesting that he had no rational comprehension of the proceedings against him.  On December 14, 2022, at his initial appearance, Mr. Edwards was unable to understand the nature of the charges or the maximum penalties he was facing.  Doc. 14 at 5-6.  At this hearing, prior defense counsel expressed "difficulty explaining the charges to Mr. Edwards."  *Id.* at 6.  In fact, the only information that prior defense counsel could obtain from Mr. Edwards was the name of a private attorney who did not represent the defendant.  *Id.*  Before concluding the hearing, the Court addressed Mr. Edwards directly and attempted to obtain additional information.  *Id.* at 7.  Mr. Edwards was unable to provide any responsive answers to the Court.

In addition to the foregoing, Mr. Edwards's Pretrial Services Report indicated that he had a learning disability, that he was homeschooled, and that he suffered from autism, which was never formally diagnosed.

### B.   *Competency Evaluations*

#### 1.   *First Evaluation by Dr. Danziger*

On February 2, 2023, Jeffrey A. Danziger, M.D. ("Dr. Danziger") conducted the first competency evaluation of Mr. Edwards at the Orange County Jail.  A copy of Dr. Danziger's evaluation report was submitted to the Court under seal.  Sealed Doc. 70.  The government will also introduce Dr. Danziger's report at Mr. Edwards's competency evaluation.  In his report, Dr. Danziger acknowledged that

he did not review the legal pleadings in this case, including the charging instrument.   Instead, the only document concerning factual allegations that Dr. Danziger reviewed was a newspaper article about Mr. Edwards's legal charges.

During this first evaluation, Mr. Edwards "presented with a very childlike demeanor . . . seemingly frightened," and was "entirely unable to provide . . . even the simplest historical information."   When Dr. Danziger asked questions, Mr. Edwards could only respond "mom and dad help me" or "mom and dad give me special bread."   Dr. Danziger was unable to conduct any forensic tests, including tests for malingering.

Despite the limitations of the evaluation, Dr. Danziger provided a diagnosis for Mr. Edwards of "Probable Malingering."   This guarded opinion was based on inconsistent information that Dr. Danziger gleamed from unidentified corrections staff at the Orange County Jail.   According to Dr. Danziger, some corrections staff confirmed that Mr. Edwards "acts in a childlike fashion," while other staff members reported a "higher level" functioning by the defendant.   Additionally, unreliable third-hand information was factored into Dr. Danziger's opinion from "fellow inmates" who claimed that Mr. Edwards was "faking."

Dr. Danziger's report and his ultimate opinion should not be relied on by this Court.   As noted, Dr. Danziger was not able to conduct any forensic testing.

Moreover, the information that Dr. Danziger relied on from the corrections staff and inmates was inconsistent and unreliable.

On February 13, 2023, the Court held a status conference to discuss Dr. Danziger's report.  Docs. 68-69.  During the status conference, the government expressed its agreement with Dr. Danziger's report, while prior defense counsel objected to the report. Docs. 69, 72.  Prior defense counsel requested an additional examination to further assess Mr. Edwards's competency.  *Id.*  The government did not object to a second examination, and both sides agreed that Mr. Edwards should be committed to the custody of the Attorney General for a more thorough examination.  *Id.*  Thereafter, the Court ordered that Mr. Edwards should be sent to a suitable BOP facility for a second competency evaluation.  Doc. 72.  Based on the foregoing, the government has tacitly conceded that Dr. Danziger's report was not sufficient to determine Mr. Edwards's competency to stand trial.

### 2.    *Second Evaluation By Dr. Micono*

Mr. Edwards was ultimately sent to the Federal Correctional Institution in Englewood, Colorado ("FCI Englewood") where he was evaluated by Jessica Micono, Psy.D. ("Dr. Micono"), a board-certified forensic psychologist employed by the BOP.  On April 17, 2023, Dr. Micono issued a forensic evaluation report, which the Court received under seal.  *See* Sealed Doc. 94; Doc. 97.  The government

will be introducing this report into evidence at Mr. Edwards's competency hearing.

Dr. Micono's evaluation consisted of several clinical interviews and observations of Mr. Edwards's behavior at the facility.  Specifically, Dr. Micono saw Mr. Edwards on March 15, 2023 (approximately one hour and 20 minutes), March 21, 2023 (approximately one hour and 30 minutes), March 22, 2023 (approximately two hours), and April 3, 2023 (two sessions – the first lasting approximately one hour and 30 minutes, and the second lasting approximately 15 minutes).   Additionally, a doctoral psychology intern met with Mr. Edwards on other dates and times under Dr. Micono's supervision.

Dr. Micono also reviewed several court documents and collateral sources of information, including social media posts and podcast recordings from a "profile with the name Joshua Edwards."   In the social media posts, Mr. Edwards gave sermons and discussed Bible verses.   In the podcast recordings, it appeared that he was "reading out loud off of a cue card."

Dr. Micono also reviewed several of Mr. Edwards's recorded inmate calls to his sister and mother.   In these calls, Mr. Edwards's sister and mother gave him instructions on how to answer questions during Dr. Micono's interviews.   In the calls, it appeared that Mr. Edwards did not fully comprehend the situation he was in, as he repeatedly asked his sister and mother the same questions, despite his

family providing him with answers.  According to Dr. Micono, Mr. Edwards's telephone calls to his family were "consistent with his presentation during evaluation sessions."

Dr. Micono also conducted and attempted to conduct several different forms of psychological testing.  Mr. Edwards' performance and level of participation in these tests varied.  In some instances, he scored in extremely low ranges.  Dr. Micono noted that Mr. Edwards's test results demonstrated potential evidence of feigning or exaggerating symptoms.  However, she also noted that:

> A primary problem resulting from a defendant's efforts to exaggerate and/or feign symptoms is the associated problem of assessing cognitive and mental health issues that might be present.  That is, just because an individual is exaggerating or feigning certain mental health or cognitive problems, it does not preclude the presence of genuine mental health problems.

Dr. Micono concluded that there was evidence that Mr. Edwards may be suffering from autism spectrum disorder, which would significantly impair his ability to understand the nature and consequences of the proceedings, and would inhibit his ability to properly assist counsel in his defense.  Stated another way, Mr. Edwards's behavior during the interviews and observations conducted by Dr. Micono were consistent with someone suffering from autism spectrum disorder.

Mr. Edward's lack of formal education or social life, outside of his family unit, could also explain why this condition may have gone unidentified during his formative years.   As noted in Dr. Micono's report, Mr. Edwards was

homeschooled and received a degree from an unaccredited religious institution. An internet search revealed that a diploma from this institution does not "certify levels of attainment, but rather accumulation of training credits."  Mr. Edwards also had no dating history and few friends.

Ultimately, Dr. Micono concluded that Mr. Edwards was not competent to proceed and she recommended that he be committed to a federal medical center for restoration treatment.

On April 28, 2023, the Court held another hearing on Mr. Edwards's competency status.  Docs. 95-96.  At this hearing, the Court accepted Dr. Micono's evaluation and opinions, without objection from either party.  Doc. 97.  On this same date, the Court found by a preponderance of the evidence that Mr. Edwards was not competent to proceed and committed him to a BOP facility for restoration treatment.  *Id.*

### 3.    *Third Evaluation By Dr. Abdelaal*

Pursuant to the Court's commitment order (Doc. 97), Mr. Edwards arrived at the Metropolitan Correctional Center in Chicago, Illinois ("MCC Chicago") on August 24, 2023.  Thus, it appears that for four months, Mr. Edwards's mental incompetency went untreated and unaddressed while he waited at the Orange County Jail to be transported to a BOP facility for competency restoration.   At MCC Chicago, Mr. Edwards's treatment was overseen by Y. Abdelaal, Psy.D. ("Dr.

13

Abdelaal"), a forensic psychologist.  It does not appear that Dr. Abdelaal is board certified as  Dr. Micono was.

On January 25, 2024, Dr. Abdelaal issued a forensic evaluation report, indicating that Mr. Edwards was fit to proceed in this case.  *See* Sealed Doc. 121. The BOP also submitted under seal a certificate of restoration of competency to stand trial for Mr. Edwards.  *See* Sealed Doc. 123.  The government will be introducing into evidence Dr. Abdelaal's report at the upcoming competency hearing.  In addition, the government will likely call Dr. Abdelaal as its only witness at the hearing.

Similar to Dr. Danziger, Dr. Abdelaal was not able to conduct substantive interviews or testing with Mr. Edwards.  At various times, Mr. Edwards expressed an unwillingness to speak with BOP personnel at MCC Chicago, including Dr. Abdelaal, without his attorney present.

Dr. Abdelaal also reviewed inmate calls made by Mr. Edwards to his family. Similar to the inmate calls that he made while at FCI Englewood, Mr. Edwards conversations with his family primarily focused on bible verses and prayers.  He also continued to receive information and instructions from his mother and sister on how to behave and conduct himself while at MCC Chicago.  This is consistent with Mr. Edwards's inability to fully comprehend the proceedings or his situation.

He needed help and assistance from his family because he simply did not know how to act or behave.

Because Dr. Abdelaal could not conduct any interviews or testing, "there was no additional historical information obtained during the evaluation period at MCC Chicago." Instead, Dr. Abdelaal relied heavily on Dr. Micono's evaluation report, which was copied and quoted extensively throughout Dr. Abdelaal's report. Prior defense counsel also reiterated to Dr. Abdelaal that Mr. Edwards did not appear to understand him or his questions. Thus, prior defense counsel was still not able to consult with Mr. Edwards about the case or his potential defenses.

Despite the dearth of new information available to her, Dr. Abdelaal reached the conclusion that "there was sufficient information to complete" her evaluation report on Mr. Edwards's current competency status. Dr. Abdelaal specifically diagnosed Mr. Edwards with "other specified personality disorder" but noted that his "eccentric behavior" could also suggest "schizoid or schizotypal personality disorder." Dr. Abdelaal assigned a personality disorder to Mr. Edwards based primarily on his telephone conversations with his family. Specifically, Dr. Abdelaal claimed that Mr. Edwards was attempting to conceal the content of his discussions and spoke to his family about "how he should approach" his evaluations. However, the recorded telephone calls equally suggested that Mr. Edwards's family was providing information to him about how he should conduct

himself and/or answer questions from BOP staff because the defendant had no ability to understand the proceedings or his situation.

Dr. Abdelaal also claimed that her diagnosis was based on Mr. Edwards's "lack of remorse" with regard to the alleged offenses. In essence, she suggested that she could diagnose a personality disorder because an individual accused of a crime did not express remorse or admit to the crime when speaking with his family. This thought process by Dr. Abdelaal was flawed and assumed that Mr. Edwards was guilty, when, in fact, he is presumed to be innocent under the law.

Dr. Abdelaal acknowledged that Mr. Edwards "does exhibit some characteristics that may suggest the presence of Autism Spectrum Disorder" as well as "some data suggesting cognitive defects." However, based on conjecture and a flawed interpretation of Dr. Micono's report, Dr. Abdelaal ruled these conditions out in order to reach her ultimate opinion that Mr. Edwards was competent to proceed.

An example of Dr. Abdelaal's problematic analysis is her reliance on Mr. Edwards's "doctoral degree" in support of her finding that he could not have an intellectual developmental disorder. As noted above, Mr. Edwards does not have a doctoral degree in a rigorous field of study or discipline, such as physics, science, literature or history, nor does he have a degree from an accredited institution of

higher learning.  Instead, as Dr. Micono noted in her report, Mr. Edwards holds a "doctor of practical ministry" from an unaccredited religious institution.

Dr. Abdelaal also claimed that Mr. Edwards "has communicated with defense counsel, to some extent, in the past."  This is belied by the record in this case.  It does not appear that Mr. Edwards ever had meaningful communication with his prior defense counsel.  In fact, Dr. Abdelaal's report confirmed that prior defense counsel had no real ability to effectively communicate with Mr. Edwards.

Based on the foregoing, as well as the arguments and cross-examination that will occur at the competency hearing, the undersigned will ask this Court to give little weight to Dr. Abdelaal's opinions.

### 4.    *Additional Attempts At Competency Evaluations By Dr. Otto*

On April 26, 2024, Dr. Otto, the undersigned's expert, attempted to conduct a follow-up competency evaluation of Mr. Edwards at the Orange County Jail. Sealed Docs. 178, 178-1 at 2.  Dr. Otto was unable to gather first-hand information from Mr. Edwards.  *Id.*  Similar to the two BOP experts, Dr. Otto reviewed case materials and prior evaluation reports, as well as some recorded phone conversations.  However, he did not have sufficient information to offer an opinion as to Mr. Edwards's competency.  *Id.*

On May 28, 2024, Dr. Otto met with Mr. Edwards at the United States Marshal's Office inside of the courthouse. Doc. 201 at 2.  After meeting with Mr.

Edwards and attempting to commence his evaluation, Dr. Otto requested that the undersigned come to the United States Marshal's Office to assist the doctor in his efforts to evaluate Mr. Edwards.  *Id.*  Thereafter, the undersigned arrived at the United States Marshal's Office and met with Dr. Otto and Mr. Edwards.  *Id.*  Despite diligent efforts, Dr. Otto was not able to complete a competency evaluation of Mr. Edwards.  *Id.*  Once again, Dr. Otto informed the undersigned that he would not be rendering an opinion as to Mr. Edwards's current competency status.  *Id.*

### C.   *Additional Information Concerning Mr. Edwards's Behavior*

Since the BOP's certification of competency restoration, Mr. Edwards has continued to present an inability to consult with his attorneys or meaningfully assist in his defense.  For example, on February 14, 2024, prior defense counsel attempted to confer with Mr. Edwards via a video-visit at the Orange County Jail.  Doc. 128.  Within 30 seconds of this meeting, Mr. Edwards claimed he wanted another attorney but then got up from the video meeting and left without further conversation.  *Id.*

After his appointment on February 21, 2024, the undersigned has made numerous attempts to confer with Mr. Edwards by visiting him in-person at the Orange County Jail and through the video visitation system at the jail.  Despite

these efforts, the undersigned has never been able to meaningfully discuss this case with Mr. Edwards.

In recent hearings, Mr. Edwards has also exhibited an inability to fully understand or acknowledge the Court when it has addressed the defendant directly.

### D.    Mr. Edwards Remains Not Competent To Proceed

Mr. Edwards maintains that the government bears the burden of establishing that his competency has been restored, that he now has the capacity to understand the consequences of a guilty plea, and that he currently understands the rights that he gives up by entering a plea.  Such an understanding requires an ability to comprehend the federal sentencing guidelines, the advisory nature of the guidelines, and to be able to relate to counsel those facts which would be relevant to such determinations.

Should he proceed to trial, at a bare minimum, Mr. Edwards must have the ability to provide counsel with information necessary to develop all potential legal defenses, assist counsel in confronting the government's witnesses, and he must be in a position to make an intelligent determination as to whether or not he will testify, and, if he so decides, to testify coherently and with sufficient memory.

In is current state, Mr. Edwards as no ability to perform any of the aforementioned tasks or functions.  As of this filing, he cannot even discuss the

most basic aspect of his case, much less assist the undersigned in developing a defense theory. Moreover, the undersigned does not even know how or where to begin a discussion with Mr. Edwards on the pros and cons of going to trial versus entering a guilty plea. In sum, Mr. Edwards remains the same person he was at the beginning of these proceedings – an incompetent individual who cannot meaningfully participate in the proceedings or assist his counsel.

This Court should rely on Mr. Edwards's in-court behavior, the observations of defense counsel, and the Court's own observations, all of which point to the conclusion that the defendant's competency has not been restored. Moreover, the Court should assign little weight to the opinions of Dr. Danziger and Dr. Abdelaal, both of whom were unable to conduct thorough evaluations of Mr. Edwards, nor were they able to complete any psychological testing. In contrast, this Court should give considerable weight to Dr. Micono's report and opinions, as she spent the most time observing and evaluating Mr. Edwards. Accordingly, the Court should adopt Dr. Micono's conclusion that Mr. Edwards is not competent to proceed. The government cannot establish by a preponderance of the evidence that Mr. Edwards's competency has been restored since Dr. Micono's opinions were issued.

Lastly, the Court should reject any argument that Mr. Edwards is malingering or feigning symptoms. As noted in Dr. Abdelaal's report, the DSM-

5-TR states that an essential feature of malingering is the intentional exaggeration of symptoms to avoid consequences.   Here, Mr. Edwards has remained incarcerated since his initial appearance on December 14, 2022.  He is charged with non-violent fraud offenses and has no prior criminal history.  Thus, Mr. Edwards would have a strong case for pretrial release conditions under the Bail Reform Act, 18 U.S.C. § 3142.

Mr. Edwards's conduct is not consistent with malingering.   He is not feigning symptoms to avoid a consequence.  At multiple hearings in the past year, Mr. Edwards has asked the Court when he could be released in this case. Unfortunately, because his competency status remains unresolved, the Court cannot conduct Rule 5 proceedings, including a detention hearing.  *See* Doc. 137. Mr. Edwards's actions have hurt him, not helped him in this case.   His continued inability to confer with counsel and the BOP experts has resulted in a delay of his ability to seek pretrial release for a year and six months at this point in the proceedings.  If he were truly a self-interested malingerer, he would have thrown in the towel long ago, and agreed to a competency finding so that he could ask the Court to set pretrial release conditions.

Based on the foregoing, the more persuasive evidence and inferences establish that Mr. Edwards continues to suffer from a serious mental disease or

defect, which renders him mentally incompetent to the extent that he is unable to assist properly in his defense.

## CONCLUSION

Mr. Edwards's competency to participate in the legal proceedings against him has not been restored.  Thus, the prosecution of Mr. Edwards is a violation of due process.

WHEREFORE, the Defendant, Joshua Edwards, requests that this Court enter an Order finding him not competent to stand trial.

Respectfully submitted on this 3rd day of July, 2024.

s/Andrew C. Searle
**ANDREW C. SEARLE, ESQ.**
Florida Bar No.  0116461
**SEARLE LAW P.A.**
200 East Robinson Street, Suite 1150
Orlando, Florida 32801
Telephone: 407-952-0642
Email: andrew@searle-law.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on  July 3, 2024, I filed a copy of the foregoing with the Clerk of the Court via the CM/ECF system. I further certify that all parties to this case are equipped to receive service of documents via that system.

s/ Andrew C. Searle
**ANDREW C. SEARLE, ESQ.**
Florida Bar No.  0116461
**SEARLE LAW P.A.**
200 East Robinson Street, Suite 1150
Orlando, Florida 32801
Telephone: 407-952-0642
Email: andrew@searle-law.com
Attorney for Defendant
