UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

VS.                                                  CASE NO: 6:22-cr-201-WWB-LHP

JOSHUA EDWARDS

---

### ORDER

On December 7, 2022, a grand jury returned an indictment charging Defendant Joshua Edwards with one count of conspiracy to commit bank fraud, one count of bank fraud, one count of making a false statement to a lending institution, and one count of visa fraud, in violation of 18 U.S.C. § 1349, 18 U.S.C. § 1344, 18 U.S.C. § 1014, and 18 U.S.C. § 1546(a), respectively. Doc. No. 1. Joshua Edwards was arrested on December 14, 2022, and an initial appearance proceeding pursuant to Fed. R. Crim. P. 5 was conducted before United States Magistrate Judge David A. Baker that same day. Doc. No. 9, 11.

During the course of the Rule 5 proceedings, Magistrate Judge Baker determined that there was a question as to Joshua Edward's mental competency to proceed. Doc. Nos. 9, 14. Accordingly, Magistrate Judge Baker continued the Rule 5 proceedings, provisionally appointed counsel pursuant to the Criminal Justice Act, appointed Dr. Jeffrey Danziger to examine Defendant pursuant to 18

E16 /2a

U.S.C. §§ 4241 and 4247(b), and ordered Joshua Edwards temporarily detained. Doc. Nos. 9, 16, 19.

On February 2, 2023, Dr. Danziger submitted his expert report, in which he opines that Joshua Edwards is feigning his condition and malingering, and that he is competent to proceed. Doc. No. 70 (filed under seal). The Court held a status conference with counsel today, February 13, 2023, to discuss Dr. Danziger's report and further proceedings. Doc. Nos. 68-69. During the status conference, the United States expressed its agreement with Dr. Danziger's report, while counsel for Joshua Edwards voiced objection to the report. Doc. No. 69. Counsel for Defendant also requested an additional examination to further assess Joshua Edwards' competency. *Id.* The United States did not object to a second examination, and both sides agreed that Joshua Edwards should be committed to the custody of the Attorney General to conduct the evaluation. *Id.; see also* 18 U.S.C. §§ 4247(b) and (c); *United States v. McDonald*, Crim. No. 09-656-01-(SDW), 2012 WL 4659242 (D. N.J. Oct. 1, 2012).

Accordingly, upon consideration of the report of Dr. Danziger's report and the argument of counsel at today's status conference, it is hereby **ORDERED** as follows

1. The Court finds that there is reasonable cause to believe that Joshua Edwards may presently be suffering from a mental disease or defect rendering him

mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. *See* 18 U.S.C. § 4241(a).

2.   Joshua Edward's oral motion for a second competency evaluation is **GRANTED**. Joshua Edwards is committed to the custody of the Attorney General for placement in a suitable facility to conduct a psychiatric or psychological examination of Joshua Edwards, and to prepare and submit to the Court and all parties a psychiatric or psychological report assessing "whether [Joshua Edwards] is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against hm or to assist properly in his defense." 18 U.S.C. §§ 4247(b), (c). *See also* 18 U.S.C. §§ 4241(b). The term of commitment shall be for a reasonable period, not to exceed thirty (30) days. 18 U.S.C. § 4247(b). The Attorney General may request, on motion to the Court, an additional reasonable period of time for evaluation, not to exceed fifteen (15) days, upon a showing of good cause that the additional time is necessary to observe and evaluate Joshua Edwards. *Id.*

3.   The Clerk is **DIRECTED** to provide a copy of this Order to the United States Marshals Service. It is **ORDERED** that the United States Marshals Service shall promptly advise the Court and counsel for the parties once the Attorney

General has designated a facility for Joshua Edwards' evaluation. Because Joshua Edwards remains detained, the United States Marshal is further **DIRECTED** to transport Joshua Edwards to the designated facility.

4. If the Bureau of Prisons' and the designated facility's policies and procedures permit, the designated facility shall notify Joshua Edwards' counsel of the date of the evaluation, and allow him to attend all or a portion of the evaluation. The Court is not directing the facility to change or modify any of its policies or procedures to afford such an accommodation – it is entirely at the discretion of the facility and if the applicable policies and procedures permit.

5. The Order to Show Cause (Doc. No. 63) is hereby **DISCHARGED**.

**DONE** and **ORDERED** in Orlando, Florida on February 13, 2023.

*Leslie Hoffman Price*

**LESLIE HOFFMAN PRICE**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

United States Marshal
United States Attorney
Counsel for Defendant



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 6:22-cr-201-WWB-LHP
18 U.S.C. § 1344
18 U.S.C. § 1349
18 U.S.C. § 1014
18 U.S.C. § 1546

EVAN EDWARDS
  a/k/a Ian Heringa
JOSHUA EDWARDS

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
(Conspiracy to Commit Bank Fraud)

#### A. Introduction

At all times material to this Indictment:

1. EVAN EDWARDS a/k/a Ian Heringa resided in New Smyrna Beach, Florida, in the Middle District of Florida.

2. JOSHUA EDWARDS resided in New Smyrna Beach, Florida, in the Middle District of Florida.

3. Aslan International Ministry, Inc. ("ASLAN") was a foreign not for profit corporation doing business in Florida that EVAN EDWARDS a/k/a Ian Heringa formed in Florida on or about June 5, 2018. ASLAN purportedly provided religious services. The formation document listed EVAN EDWARDS a/k/a Ian

Ex b 126

Heringa as the chairperson, president, and registered agent of ASLAN. On or about April 3, 2020, EVAN EDWARDS a/k/a Ian Heringa was removed as the registered agent of ASLAN and JOSHUA EDWARDS was added as the registered agent of ASLAN.

4. In or around March 2020, in response to the economic crisis caused by the novel coronavirus pandemic, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). Among other things, the CARES Act made available to qualified small businesses billions of dollars' worth of government-guaranteed loans, through the Paycheck Protection Program (the "PPP"). The purpose of PPP loans was to help small businesses that were suffering from the economic downturn to continue to pay salary or wages to their employees.

5. The PPP was administered by the Small Business Administration (the "SBA"), which promulgated regulations concerning the eligibility for PPP loans. Eligible businesses could apply for a PPP loan through a federally insured depository institution. To qualify for a loan under the PPP, an applicant had to meet certain criteria, including, among other things, that it (the business) was "in operation on February 15, 2020 and either had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC."

Moreover, the loan amount that could be approved under the PPP and implementing regulations typically was a function of the applicant's historical payroll costs. Accordingly, to obtain a PPP loan, the applicant was required to state, among other things, its average monthly payroll expenses and number of employees. The applicant was also required to provide documentation of the business's payroll expenses.

6. PPP loan applications were processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

7. The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, mortgage interest payments (but not mortgage prepayments or principal payments), rent payments, utility payments, interest payments on debt obligations that were incurred before February 15, 2020, or refinancing certain specified SBA loans. The proceeds of a PPP loan were not permitted to be used to fund the borrower's ordinary day-to-day living expenses, or anything unrelated to the specified authorized expenses.

8. First Home Bank, now known as BayFirst ("First Home Bank"), was a bank the deposits of which were insured by the Federal Deposit Insurance Corporation (the "FDIC"). First Home Bank therefore constituted a "financial institution" for purposes of 18 U.S.C. §§ 20 and 1344.

### B. The Scheme to Defraud

9. Beginning on an unknown date, but at least as early as on or about April 3, 2020, and continuing through at least in or about September 17, 2020, in the Middle District of Florida, and elsewhere, the defendants,

**EVAN EDWARDS**
**a/k/a Ian Heringa**
and
**JOSHUA EDWARDS,**

did knowingly and willfully combine, conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury, to commit bank fraud: that is, to knowingly, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud a financial institution and to obtain any of the moneys, funds, credits, assets, and other property owned by, and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1344.

### C. Manner and Means of the Conspiracy

10. The manner and means by which the conspirators sought to accomplish the objects and purposes of the conspiracy included, among other things, the following:

11. It was part of the conspiracy that one or more conspirators would and did submit and cause to be submitted a fraudulent PPP loan application to First Home Bank on behalf of ASLAN.

12. It was further part of the conspiracy that one or more of the conspirators would and did knowingly include in ASLAN's PPP loan application materially false and fraudulent representations and materially false and fraudulent supporting documentation, including:

    a. A false claim in the PPP loan application that ASLAN had average monthly payroll expenses of $2,764,438, when in truth and in fact, as the conspirators then and there well knew, ASLAN's actual average monthly payroll expenses were significantly lower, or entirely nonexistent.

    b. A false claim in the PPP loan application that ASLAN had 486 employees, when in truth and in fact, as the conspirators then and there well knew, ASLAN's actual number of employees was significantly lower, or entirely nonexistent.

    c. False and fabricated IRS Forms 941 that purported that hundreds of employees were employed by ASLAN, when in truth and in fact, as the conspirators then and there well knew, ASLAN's actual number of employees was significantly lower, or entirely nonexistent.

d.  False and fabricated IRS Forms 941 that purported to show millions of dollars in quarterly wages, tips, and other compensation paid by ASLAN, when in truth and in fact, as the conspirators then and there well knew, the actual amount of quarterly wages, tips, and other compensation paid by ASLAN was significantly lower, or entirely nonexistent.

e.  False and fabricated IRS Forms 990 that purported to show that ASLAN had annual revenues of $51,869,741 in 2019 and $48,235,824.00 in 2018, when in truth and in fact, as the conspirators then and there well knew, ASLAN's actual annual revenues were significantly lower, or entirely nonexistent.

f.  A false certification in the PPP loan application that "[t]he funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments," when in truth and in fact, as the conspirators then and there well knew, the conspirators intended to use the PPP loan proceeds for unauthorized purposes, including for a down payment of the attempted purchase of a multi-million dollar residence for themselves.

g.  A false certification in the PPP loan application that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate," when in truth and in fact, as the conspirators then and there well knew, the information provided in the PPP loan application and supporting documentation and forms was not true and accurate in all material respects.

13. It was further part of the conspiracy that EVAN EDWARDS a/k/a Ian

Heringa and JOSHUA EDWARDS obtained PPP loan proceeds in the amount of approximately $8,417,200 as a result of the materially false PPP loan application.

14. It was further part of the conspiracy that the conspirators knowingly spent and attempted to spend a portion of those proceeds on purchases that they knew were not authorized under the PPP, including the down payment for the attempted purchase of a multi-million dollar residence for themselves.

15. It was further part of the conspiracy that one or more conspirators would and did perform acts and make statement to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme and the acts committed in furtherance of the scheme.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO
### (Bank Fraud)

#### A. Introduction

1. The Grand Jury hereby realleges paragraphs 1 through 15 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

#### B. The Scheme

2. Beginning on an unknown date, but at least as early as on or about April 3, 2020, and continuing through at least in or about September 2020, in the Middle District of Florida, and elsewhere, the defendants,

**EVAN EDWARDS**
**a/k/a Ian Heringa**

and
**JOSHUA EDWARDS,**

aided and abetted by others, did knowingly and with intent to defraud, execute, and attempt to execute, a scheme and artifice to defraud a financial institution and to obtain any of the moneys, funds, credits, assets, and other property owned by, and under the custody and control of, a financial institution, by means of materially false and fraudulent pretenses, representations, and promises.

### C. Manner and Means of the Scheme

3. The substance of the scheme and artifice to defraud and its matter and means are set forth in paragraphs 9 through 15 of Count One of this Indictment, the allegations of which are repeated and realleged as if fully set forth herein.

### D. Executions of the Scheme

4. On or about April 3, 2020, in the Middle District of Florida, and elsewhere, the defendants,

**EVAN EDWARDS**
**a/k/a Ian Heringa**
and
**JOSHUA EDWARDS,**

aided and abetted by others, and for the purpose of knowingly, and with intent to defraud, executing, and attempting to execute the aforementioned scheme and artifice to defraud a financial institution, and to obtain any of the moneys, funds, credits, assets, and other property owned by, and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses,

representations, and promises, did submit and cause to be submitted a false PPP loan application, to a financial institution, that is, First Home Bank.

All in violation of 18 U.S.C. §§ 1344 and 2.

## COUNT THREE
### (False Statement to Lending Institution)

1. Paragraphs 1 through 8 of Count One of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2. On or about April 6, 2020, in the Middle District of Florida and elsewhere, the defendant,

### JOSHUA EDWARDS,

knowingly made a false statement for the purpose of influencing the actions of First Home Bank, an institution the accounts of which were insured by the FDIC, in connection with a PPP loan application by ASLAN, in that the defendant signed and initialed a PPP loan application, representing that SBA loan proceeds would be used exclusively for business related purposes and certifying that the PPP funds would be used only to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments on behalf of ASLAN, when in truth and in fact, as the defendant then well knew, the SBA loan proceeds would not be used exclusively for business related purposes and the PPP funds would not be used only to retain workers and maintain payroll or to make mortgage payments, lease payments, and utility payments on behalf of ASLAN.

In violation of 18 U.S.C. §§ 1014 and 2.

## COUNT FOUR
### (Visa Fraud)

On or about June 14, 2021, in the Middle District of Florida and elsewhere, the defendant,

### EVAN EDWARDS
### a/k/a Ian Heringa,

did knowingly make under oath, and subscribe as true under penalty of perjury, a false statement with respect to a material fact in an application and document required by the immigration laws and regulations prescribed thereunder, to wit, Form I-485, Application to Register as Permanent Resident or Adjust Status, that is, that he had never been arrested, cited, charged or detained for any reason by any law enforcement official, which statement the defendant then and there knew was false, in that he had been arrested, charged, and detained by a law enforcement official on or about September 17, 2020.

In violation of 18 U.S.C. § 1546(a).

## COUNT FIVE
### (Visa Fraud)

1. Paragraph 3 of Count One of this Indictment is realleged and incorporated by reference as if fully set forth herein.

2. On or about June 14, 2021, in the Middle District of Florida and elsewhere, the defendant,

### EVAN EDWARDS
### a/k/a Ian Heringa,

did knowingly make under oath, and subscribe as true under penalty of perjury, a false statement with respect to a material fact in an application and document required by the immigration laws and regulations prescribed thereunder, to wit, Form I-140, Immigration Petition for Alien Workers, that is, that the gross annual income of ASLAN was $1,358,728, which statement the defendant then and there knew was false, in that the gross annual income of ASLAN was lower than that amount.

In violation of 18 U.S.C. § 1546(a).

## COUNT SIX
### (Visa Fraud)

On or about June 14, 2021, in the Middle District of Florida and elsewhere, the defendant,

### JOSHUA EDWARDS,

did knowingly make under oath, and subscribe as true under penalty of perjury, a false statement with respect to a material fact in an application and document required by the immigration laws and regulations prescribed thereunder, to wit, Form I-485, Application to Register as Permanent Resident or Adjust Status, that is, that he had never been arrested, cited, charged or detained for any reason by any law enforcement official, which statement the defendant then and there knew was false, in that he had been arrested, charged, and detained by a law enforcement official on or about September 17, 2020.

In violation of 18 U.S.C. § 1546(a).

## **FORFEITURE**

1. The allegations contained in Counts One, Two, and Three are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A). The allegations contained in Counts Four, Five, and Six are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(6).

2. Upon conviction of a violation of 18 U.S.C §§ 1349, 1344 and/or 1014, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violation.

3. Upon conviction of a violation of 18 U.S.C. § 1546, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(6):

   a. Any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense;

   b. Any property, real or personal, that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; and

   c. Any property that is used to facilitate, or is intended to be used to facilitate, the commission of the offense.

4. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C § 853(p), as incorporated by 18 U.S.C § 982(b)(1).



Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Kara M. Wick
Assistant United States Attorney

By: _____ for Chauncey Bratt
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

13

FORM OBD-34
APR 1991

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

THE UNITED STATES OF AMERICA

vs.

EVAN EDWARDS
a/k/a Ian Heringa
JOSHUA EDWARDS

## INDICTMENT

Violation:

18 U.S.C. § 1344
18 U.S.C. § 1349
18 U.S.C. § 1014
18 U.S.C. § 1546

Filed in open court this 7th day of December, 2022.

_____
Clerk

Bail $ _____

GPO 863 525