UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

      v.                         CASE NO. 6:22-cr-00201-WWB-LHP

JOSHUA EDWARDS

## GOVERNMENT'S POST-HEARING MEMORANDUM IN SUPPORT OF COMPETENCY FINDING

The United States of America, in accordance with this Court's Order, hereby files this briefing, and respectfully requests that the Court find the defendant competent to stand trial under 18 U.S.C. § 4241.[1] Without question, the defendant has malingered significant mental health deficits, but he has done so inconsistently and in a way that doesn't match with any identifiable mental health diagnosis under the Diagnostic and Statistical Manual of Mental Disorders (DSM). In fact, the defendant does not have any established mental health defect or disorder that would rise to a level which would render him incompetent. Further, the defendant has a factual and rational understanding of the proceedings, and he has the ability, even though he may be unwilling, to assist properly in his defense.

---

[1] As an initial matter, the government notes that all the competency exhibits were admitted into evidence by agreement with the defense, and without any restrictions or objections. *See* transcript of hearing, *United States v. J. Edwards*, 6:22-cr-201-WWB-LHP, July 10, 2024, ("I have no basis to object and so I don't object, Your Honor").

# BACKGROUND

On December 7, 2022, a federal grand jury returned an indictment against the defendant, Joshua Edwards, charging him with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349, Bank Fraud in violation of 18 U.S.C. §§ 1344 and 2, False Statement to Lending Institution in violation of 18 U.S.C. §§ 1014 and 2, and Visa Fraud in violation of 18 U.S.C. § 1546(a). The sophisticated scheme involved multiple frauds to procure more than $8 million in funds from the Federal Government.

On or about December 14, 2022, the defendant was arrested. Joint Task Force-DHS Agent Javier Mondejar was one of the officers who arrested the defendant and escorted him to his initial appearance. Agent Mondejar testified that his interactions with the defendant were normal and comprehensible:

> A:  . . . we assisted him and we handcuffed him, patted him down for weapons, and then we escorted him out.
>
> Q. Okay. And during what you've just described, did Mr. Joshua Edwards speak to you at all?
>
> A. Yes, ma'am. He was asking what was going on and if his dad was okay.
>
> Q. And you were able to understand and comprehend what he was saying to you?
>
> A. Yes, ma'am.

<div align="center">*        *        *</div>

> Q. All right. At some point was Mr. Joshua Edwards Mirandized?
>
> A. Yes, ma'am. Mr. Edwards was escorted out of the house by myself, another task force officer, and at the time was the assistant to the SAC force, Secret

> Service. We escorted him to one of our vehicles that we had running, with AC on, placed him in the back seat, read him Miranda warnings verbally. He said that he understood, and he wanted his lawyer.

Transcript of hearing, *United States v. J. Edwards*, 6:22-cr-201-WWB-LHP, July 10, 2024, pg. 79.

The judicial record and competency hearing showed that, shortly after that interaction, the defendant shut down and changed his demeanor completely after contact with his father in which his father whispered secretively in his ear. The day of his arrest, the defendant was present in Court for his initial appearance. That proceeding was transcribed. *See* Transcript of hearing, December 14, 2022, Doc. 14. In that hearing, the defendant's profound change in demeanor was evident:

> THE COURT: Thank you.
>
> Mr. Edwards, as to these charges, you have the right to remain silent, not to make any statements or comments. If you do make any statements or comments, the Government can use those statements or comments against you.
>
> Do you understand that?
>
> DEFENDANT JOSHUA EDWARDS:   (No audible response.)
>
> MR. TAYLOR:   Yes, Your Honor, if I may.   I went downstairs to speak with Mr. Joshua Edwards before the hearing in the case had started. I had difficulty explaining the charges to Mr. Edwards. The only thing I got from Mr. Edwards is that he had another attorney. I reached out to that private attorney. That attorney indicated that he did not represent Mr. Joshua Edwards. So the most I could get out of him was he wanted to speak with his attorney, which he did not have, and his mother and sister who are currently in the courtroom.
>
> Your Honor, this is the first time that I've had this happen. I do believe that there is a competency issue in this case. So I would be requesting a competency evaluation. However, I would like one to be done here in the Orlando area so it would not take as long, Your Honor.
>
> THE COURT: Mr. Edwards, can you hear me?

DEFENDANT JOSHUA EDWARDS: (No audible response.)

THE COURT: Mr. Edwards, stand up.   (Pause.)

THE COURT: Mr. Edwards, are you in pain?

DEFENDANT JOSHUA EDWARDS: (No audible response.)

THE COURT: Do you understand where we are?

DEFENDANT JOSHUA EDWARDS: (No audible response.)

THE COURT: Mr. Edwards, do you understand what I'm saying?

DEFENDANT JOSHUA EDWARDS: (No audible response.)

                    *                    *                    *

MS. WICK:   I have no objection to that, Your Honor.

I would note for the record, however, that the agents interacted with Mr. Josh Edwards this morning, and he was speaking and responding to them just fine.

Transcript of hearing, December 14, 2022, Doc. 14, pgs. 6-8.

With regard to the competency proceedings, the Court initially appointed Dr. Danziger to evaluate the defendant's competency to stand trial, and Dr. Danziger interviewed the defendant on February 2, 2023. *See* Competency Exhibit 4. Dr. Danziger opined that the defendant's diagnosis was "Probable Malingering." Exhibit 4, ¶ 14. The defendant then made an oral motion for a second competency evaluation. Doc. 71. The Court granted the motion and committed the defendant to the custody of the Attorney General for an 18 U.S.C. § 4241(b) evaluation. Doc. 72. On April 17, 2023, Dr. Micono authored a report concerning the defendant's competency to stand trial. *See* Competency Exhibit 5. Dr. Micono concluded:

> Based on Mr. Edwards' current presentation and the information available, there is evidence to suggest he may have a mental disorder (autism spectrum disorder) that is significantly impairing his present ability to understand the nature and consequences of the court proceedings against him, and his ability to properly assist counsel in his defense; however, there is also evidence that he has no mental disorder impairing his present abilities.

Exhibit 5, pg. 16. Dr. Micono also suggested that the defendant may be malingering. *Id.*, at 13. Subsequently, the Court ordered the defendant committed to the custody of the Attorney General for a competency restoration procedure under § 4241(d).    Doc. 97. Thereafter, Dr. Abdelaal prepared a report dated January 25, 2024 and rendered the opinion that:

> it is my opinion that the defendant is not currently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings or to assist properly in his defense.

Competency Exhibit 2. The Court held a competency hearing on this matter on July 10, 2024. The government introduced, without objection, all of the completed competency reports, as well as other background information and various Bureau of Prisons (BOP) records. *See* Exhibit list, Doc. 213. In addition, the government presented the testimony of Dr. Abdelaal and Joint Task Force-DHS Agent Javier Mondejar. The defendant presented no evidence.

## MEMORANDUM

### I.    Competency Legal Standards

"A defendant has a due process right not to be tried or convicted while incompetent." *United States v. Ramirez*, 491 F. App'x 65, 71 (11th Cir. 2012) (*citing*

*Drope v. Missouri*, 420 U.S. 162, 171-72 (1975)). The federal competency standard is set forth in 18 U.S.C. § 4241, which provides:

> If, after [a] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

18 U.S.C. § 4241(d).

Section 4241 codifies the standard for competency set forth by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960): "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *See also United States v. Bradley*, 644 F.3d 1213, 1268 (11th Cir. 2011) (*quoting United States v. Hogan*, 986 F.2d 1364, 1371 (11th Cir. 1993)). "[T]he bar for incompetency is high." *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008). A petitioner "is entitled to no presumption of incompetency and must demonstrate his . . . incompetency by a preponderance of the evidence." *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 481 (11th Cir. 2012). "[T]he standard of proof is high," and the facts must "positively, unequivocally and clearly generate [a] legitimate doubt." *Card v. Singletary*, 981 F.2d 481, 484 (11th Cir. 1992), *see also Perkins v. United States,* 73 F.4th 866, 876 (11th Cir. 2023).

Whether a petitioner is substantively competent is a factual determination. *United States v. Izquierdo*, 448 F.3d 1269, 1278 (11th Cir. 2006). Thus, the Eleventh Circuit reviews a district court's competency determination for clear error. *United States v. Bradley*, 644 F.3d 1213, 1267 (11th Cir. 2011). Clear error review, which is "highly deferential," asks whether a factual finding, supported by evidence, leaves us "with the definite and firm conviction that a mistake has been committed." *Eggers v. Alabama*, 876 F.3d 1086, 1094 (11th Cir. 2017), *see also Perkins v. United States*, 73 F.4th 866, 877 (11th Cir. 2023).

Here, the defendant does not argue, forcefully or persuasively, that he is incompetent. Despite the passage of more than 18 months since he first raised the issue of competency, the defendant has produced no historical, educational, or third-party information suggesting or stating that he has any mental health deficiencies, or any mental disease or defect. To the contrary, the record is replete with examples of the defendant's deceit and support a finding that he is malingering mental health deficiencies and that he is competent to stand trial.

### A.   *Burden of proof*

The government does not concede that it bears the burden of proof here, but also suggests that the evidence is not in equipoise. Without question, at the initial hearing the defendant bears the burden of proof on the issue of competency. *United States v. Bradley*, 644 F.3d 1213, 1268 (11th Cir. 2011). 18 U.S.C. § 4241(d) is silent as to who bears the burden of proof in a competency hearing. There remains a question

of who bears the burden of proof in a competency restoration proceeding. *See United States v. Madison,* No: 6:17-cr-15-Orl-37LRH*,* 2020 U.S. Dist. LEXIS 244730, 2020 WL 8461574 (M.D. Fla., Oct. 29, 2020). The government concedes that there is legal support in favor of allocating the burden of proof to the government in a restoration hearing. *Id.*, *citing United States v. Cabrera*, No. 07-20760-CR, 2008 U.S. Dist. LEXIS 44724, 2008 WL 2374234, at *6 (S.D. Fla. June 6, 2008) ("[I]f there is an adjudication of incompetency, and the defendant is committed to the Attorney General . . . the burden of persuasion shifts; i.e., the court must find by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.").

Here, the government notes that Dr. Jeffrey Danziger, M.D. opined that "Defendant was feigning his condition and malingering and therefore competent to proceed." *See* Doc. 97, pg. 1, Government Exhibit 4, Doc. 231. Thereafter, Dr. Jessica Micono, Psy. D. opined a tentative opinion that:

> Based on Mr. Edwards' current presentation and the information available, there is evidence to suggest he may have a mental disorder (autism spectrum disorder) that is significantly impairing his present ability to understand the nature and consequences of the court proceedings against him, and his ability to properly assist counsel in his defense; however, there is also evidence that he has no mental disorder impairing his present abilities. While there were indications he was not presenting an accurate picture of his current legal knowledge and abilities, no formal assessment of his actual legal knowledge and rational ability to apply this knowledge to his present legal circumstances was possible. Given

> he may be experiencing cognitive impairments, it is possible that his actual abilities are not sufficient enough for him to be considered competent to proceed. Therefore, I am offering a tentative opinion that Mr. Edwards is not currently competent to proceed.

*See* Government Exhibit 5, Doc. 231, pg. 16. The government does not dispute that the Court found "by a preponderance of the evidence that Defendant is not mentally competent as that term is defined in section 4241(a)." Doc. 97, pg. 2. The government points this out not to quibble but, rather, to illustrate that this is not "one of the rare cases in which allocation of the burden will make a difference—where the evidence is in 'equipoise.'" *United States v. Wilborn*, No. 6:13-cr-253-Orl-37GJK, 2014 U.S. Dist. LEXIS 66304 (M.D. Fla., May 14, 2014).

### B.      *Defendant's Unwillingness to Cooperate Does not equate to Incompetence*

Moreover, a defendant's unwillingness to participate in the evaluation process, or the competency hearing, does not necessarily mean that the defendant is incompetent. *See United States v. Perkins*, 787 F. 3d 1329 (11th Cir. 2015), *United States v. White*, 670 F.3d 1077 (9th Cir. 2012) ("it would have been just as reasonable for the district judge to infer that White had the ability to cooperate with an attorney, but had decided not to, that is, he was purposely causing the problem for his own reasons"). Put another way, "[n]ot every manifestation of mental illness demonstrates" that the defendant is incompetent; "rather, the evidence must indicate a present ***inability to assist*** counsel or understand the charges" at the time of the relevant proceeding, such as trial or sentencing. *Battle v. United States*, 419 F.3d 1292, 1299-1300 (11th Cir. 2005)

9

(distinguishing the defendant's behavior in the courtroom at trial with his purported "history of mental illness") (emphasis added).

The Eleventh Circuit case, *United States v. Perkins,* is instructive. *See Perkins*, 787 F. 3d 1329 (11th Cir. 2015) (direct appeal), *Perkins v. United States*, 73 F. 4th 866 (11th Cir. 2023). Before trial, the defendant as appointed counsel, who subsequently withdrew, and a second counsel was appointed. The defendant filed a pleading stating that he wanted "Revocation of Power of Attorney." *Perkins*, 787 F. 3d at 1334. At a hearing, the defendant spoke in somewhat non-sensical language stating "do not accept your offer" of self-representation and "I do not accept any of your rights .... How can I waive something that I have never accepted and that does not apply to me?" *Perkins*, 787 F. 3d at 1334. At the pre-trial conference when the district judge began to talk about the date on which trial would begin, the defendant interjected: "You're not going to tell me anything. You don't control me." *Id.*, at 1336. On the first day of trial, the defendant refused to come out of his holding cell. *Id*. The Court refused to hold a competency hearing because, the Court stated, the defendant was "employing a calculated strategy to disrupt proceedings." *Id*.

The Court of Appeals affirmed, finding that the trial Court did not abuse its discretion in finding the defendant competent to stand trial. *Id.*, at 1339. Subsequently at the 2255 hearing, it was revealed that defense counsel was aware that the defendant had previously been diagnosed with schizoaffective disorder. *Perkins*, 73 F.4th at 873. At least one BOP psychologist diagnosed the defendant with schizophrenia during his incarceration, and the defendant presented evidence of an additional psychologist who

retrospectively opined that the defendant was incompetent during his trial. *Id.*, at 873-4. Notwithstanding the additional information and evidence, the Eleventh Circuit held "there is no indication, much less one that would lead to a "definite and firm conviction" on appeal, that the district court's conclusion that Perkins was competent during sentencing was wrong. *Id.*, at 876.

The defendant here presents a much less compelling case for incompetence than the defendant in *Perkins*. First, there is no documented evidence that the defendant has ever been diagnosed with any mental disease or defect. The defendant, through counsel, has had more than a year to produce any evidence of a mental disease or defect, and has not done so. Second, the defendant has been evaluated by several mental health professionals, and none have opined that the defendant is incompetent. Dr. Micono did give a qualified opinion "offering a tentative opinion that Mr. Edwards is not currently competent to proceed," but those issues were fully addressed by Dr. Abdelaal.

### C.    The suggestion of Autism does not equate to Incompetence

The only suggestion, or claim, put forth by the defendant is that he possibly suffers from some form of Autism Spectrum Disorder. That claim is weak, and not supported by any documentary or historical information. Nevertheless, that suggestion raises the possibility that the defendant suffers from some type of mental health disorder or disease that is static over time. Any suggestion that the defendant suffers from some type of mental health disorder that has debilitated him throughout his life

to the extent that he is incompetent to stand trial, is in marked contrast to his prior behavior as a fraudster and lay minister. *See* Competency Exhibit 7.

Additionally, any suggestion that the defendant suffers from Autism Spectrum Disorder, even with a low IQ, does not equate to an incompetency finding. *See United States v. Rodriguez*, 2015 U.S. Dist. LEXIS 152323 (S.D. FLA, Nov. 10, 2015). In *Rodriguez*, the defendant was charged with child pornography offenses. The defendant was diagnosed with Autism Spectrum Disorder and borderline intellectual functioning. The trial court found the defendant incompetent after a hearing in which an additional psychologist opined that "I do not believe he meets criteria for competency to stand trial." *Rodriguez*, 2015 U.S. Dist. LEXIS 152323 *8. He was then committed under 4241(d) for a four-month restoration procedure. The BOP opined that the defendant was competent to stand trial. After a hearing, the Court ruled that:

> notwithstanding Rodriguez's established diagnosis of high functioning autism spectrum disorder and borderline intellectual function, the undersigned concludes that he meets the legal standard of competency to stand trial.

*Id.*, at *41. Key to the Court decision was the Skype chats of the defendant, which the Court found "belie [the defense psychologist's] assessment that Rodriguez can only think in concrete terms without the capacity for extrapolation, inferences or generalizations." *Id.*, at *40. The Court also rejected the defense argument that the defendant needed to be able to assist counsel in a more sophisticated way, holding:

> The undersigned also finds that defense counsel overshot the mark in his attempts to show that Rodriguez is not competent by posing questions regarding Rodriguez's ability to decipher a pre-sentence investigation report, and his ability to decide which jurors to select at trial. As noted above, the standard does not require that a defendant be able to assist in preparing the defense, but be able

to consult with his lawyer and assist in his defense. *Merriweather*, 921 F. Supp. 2d at 1301-02 & n.52. Also, as courts have noted, the standard does not require that defendants "fully comprehend the intricacies of some of the defensive theories offered by their lawyers," *Hogan*, 986 F.2d at 1373, or "have a high level of ability or performance," *Merriweather,* 921 F. Supp. 2d at 1307 n.62, or "be as intelligent and reasonable as his lawyers."  Indeed, as succinctly noted by the Eleventh Circuit, neither low intelligence nor mental deficiency "can be equated with mental incompetence to stand trial." *Medina*, 59 F.3d at 1107.

*Id*.

Here, the evidence is much more compelling that the defendant is competent, and malingering. Three psychologists who have examined the defendant have found that he is malingering symptoms, or that some of his presentation is consistent with malingering. Even if the defendant suffers from some of the symptoms mentioned, he is not nearly as impaired as the defendant in *Rodriguez*.

## II.       The Evidence Supports a Finding of Competence

### A. The Competency Evaluation Reports and July 10, 2024 Competency Proceeding

On February 2, 2023, Dr. Danziger attempted to interview the defendant at the Orange County jail. Government Exhibit 4. Dr. Danziger noted that "no records were found indicating the defendant has been evaluated by the jail psychiatrist, nor by the jail mental health staff." *Id*., at ¶ 4.   According to Dr. Danziger:

> The defendant presented with a very childlike demeanor, staring ahead, seemingly frightened, and entirely unable to provide me with even the simplest of historical information. The defendant was unable to tell me how old he was or his date of birth. He told me he lives with his mom and his dad, but he could not tell me their names, did not know what city he lived in, and did not know his address. He could not tell me anything about his education, where he grew up, or anything about his upbringing and background.

Id., at ¶ 6.

According to documents provided to Dr. Micono, the defendant served as the "Technological Operations Manager," for Aslan International Ministry, Inc. for four years. His specific duties included managing four employees and three volunteers, "supervising the day-to-day operations media team." Micono report, dated April 17, 2023, pg. 2. ASLAN International Ministry, Inc. ("ASLAN") was originally established in Ohio on June 16, 2005. On June 5, 2018, Dr. Evan Edwards, on behalf of ASLAN, filed an application to conduct business in Florida as a Foreign Not For Profit Corporation. In the application, Dr. Evan Edwards was listed as the registered agent, Chairman, and President of the business, Joshua Edwards (Evan Edwards' son) was listed as the Vice President and a Director; Dr. Joy Edwards (Evan Edwards' daughter) was listed as the Secretary and a Director; W.G. was listed as the Vice Chairman, and M.B. was listed as a Director. The application indicated that the purpose of the business was "religious." *See* Exhibits 5 and 6.

Further, the defendant was examined by Dr. Abdelaal at MCC Chicago.   Dr. Abdelaal concluded:

> In accordance with Title 18, U.S.C., §§ 4241 and 4247, it is my opinion that the defendant is not currently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings or to assist properly in his defense.

Competency Exhibit 2, pg. 20.   Dr. Abdelaal also found that:

> In this case, three of the four features of malingering are noted. Although I was unable to administer a competency specific instrument with the defendant, the defendant has had two previous competency evaluations and, in my opinion, there is sufficient collateral information (i.e., behavioral observations, phone calls, previous documented reports and evaluations) to support that the defendant is malingering competency specific deficits and cognitive impairment with regard to his presentation. Specifically, it is my opinion that the defendant

14

is intentionally presenting in a manner to appear to lack any competency related knowledge and ability to assist defense counsel.

Exhibit 2, pg. 17-18.

Dr. Abdelaal expounded on her report at the July 10, 2024 competency hearing. Dr. Abdelaal testified that the defendant as able to communicate and interact with staff at MCC Chicago. Transcript of hearing, July 10, 2024, *United States v. J. Edwards*, No. 6:22-cr-00201-WWB-LHP (M.D. Fla.) pgs. 18-19.[2] The defendant also spoke to another BOP psychologist, and responded to her questions, but then "stated that he couldn't speak with her." *Id.* The psychologist met with the defendant on several occasions and he stated "that he couldn't do anything without his attorney or that his attorney told him not to participate, similar to what he said to me and several other staff members, including a case manager who helps with facilitating legal calls." *Id.* In short, the defendant was able to, and did, interact and communicate with BOP staff and psychologists in a coherent and intelligent fashion.

Dr. Abdelaal reiterated that the defendant was malingering, or faking impairment. *Id.*, at 31. Specifically, Dr. Abdelaal testified:

> So it was my opinion that he was malingering, which is essentially a response style, and he was appearing -- attempting to appear more impaired that he generally is, if there is any impairment.

---

[2] The government notes that the defendant agreed "it's clear that the Court can consider hearsay and pretty much anything that's part of the record as part of its competency determination." Transcript of hearing, pg. 5. *See also United States v. White*, 116 F.3d 903, 923 (D.C. Cir. 1997).

*Id.*   It is highly significant that the defendant refused to interact with BOP staff, and

Dr. Abdelaal, by reference to his attorney:

> He wouldn't sign the voluntary statement of understanding of form and said that he couldn't speak to me without his attorney. And, then, from that point forward, that's what he repeatedly stated when I tried to meet with him or when I tried to engage with him on the unit even briefly. He told me that he couldn't speak to me without his attorney. And he wouldn't speak with me.

*Id.*, at 14.

Agent Mondejar, who was in the unique position to observe the defendant when

he was initially arrested and when he was present at his initial appearance, also

testified at the July10, 2024 competency hearing as follows:

> Q. Okay. And during what you've just described, did Mr. Joshua Edwards speak to you at all?
>
> A. Yes, ma'am. He was asking what was going on and if his dad was okay.
>
> Q. And you were able to understand and comprehend what he was saying to you?
>
> A. Yes, ma'am.
>
> Q. All right. At some point was Mr. Joshua Edwards Mirandized?
>
> A. Yes, ma'am. Mr. Edwards was escorted out of the house by myself, another task force officer, and at the time was the assistant to the SAC force, Secret Service. We escorted him to one of our vehicles that we had running, with AC on, placed him in the back seat, read him Miranda warnings verbally. He said that he understood, and he wanted his lawyer.
>
> Q. Okay. Did you have any other interactions with him that day?
>
> A. Yes, ma'am. We proceeded to, once we made the arrest of his father, Evan, placed him in a van with U.S. Customs and Border Protection, EMTs. For that purpose, Josh was asking about his dad, so we put him in the same van with his father. He was asking what the procedure was.   . . .

Transcript of hearing, pgs. 79-80. Agent Mondejar further testified:

Q. So during that process when you were putting him in the vehicle with his father, he was speaking to you?

A. Yes, ma'am.

Q. And that was intelligible to you. You could understand what he was saying?

A. Yes, ma'am.

Q. Was he responding to you appropriately?

A. Yes, ma'am.

*Id.*, at pg. 80

The most powerful aspect of Agent Mondejar's evidence was his testimony about observing the transformation of the defendant from someone who was interacting intelligently with law-enforcement to someone who presented as a person unable to interact with anyone. The intervening event was the defendant's contact with his father. Agent Mondejar testified:

A. He was escorted inside a cell with his dad. They started talking. I couldn't hear very well what they were saying, but they started talking one or two sentences, and then they switched to whispering in each other's ears.

Q. Okay. At some point that day, did Mr. Joshua Edwards' behavior change?

A. When we were in initial appearance.

Q. And can you describe that for the Court?

A. After coming back upstairs from U.S. Marshals, I was sitting at a table with you and the other agent. I observed Josh. He stood up. And they were standing, talking to the judge, and he was looking up at the ceiling, not paying attention, not talking to the magistrate, not acknowledging the lawyer or the judge.

Transcript of hearing, pg. 82.

### B. There is Strong Evidence of Malingering

17

Powerful evidence supports the fact that the defendant is malingering. Malingering is a psychological term that means, in essence, a defendant is faking symptoms of a mental illness to evade punishment. *See DeBruce v. Commissioner*, 758 F.3d 1263, 1300 (11th Cir. 2014). The DSM defines "malingering" as:

> The essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs.

DSM-5-TR, pg. 835.

The defendant displayed at least three of the four criteria found in the DSM-5-TR for malingering, and Dr. Abdelaal so found.[3] Abdelaal Report, pg. 17. ("In this case, three of the four features of malingering are noted"). Dr. Danziger also opined that the defendant was malingering. Danziger Report, ¶ 15 ("It is my opinion, more likely than not, based on the information available to me, the defendant's presentation is feigned and most consistent with malingering"). Additionally, Dr. Micono indicated that the defendant may be malingering. Micono Report, pg. 13 ("As a result, possible malingering is being noted"). In fact, there is no psychological evaluation that states with any certainty that the defendant is suffering from any mental disorder.

---

[3] The DSM-5-TR states that malingering should be strongly considered if any combination of the following is noted: (1) Medicolegal context of presentation (e.g., the individual is referred by an attorney to the clinician for examination, or the individual self-refers while litigation or criminal charges are pending); (2) Marked discrepancy between the individual's claimed stress or disability and the objective findings and observations; (3) Lack of cooperation during the diagnostic evaluation and in complying with the prescribed treatment regimen; and/or (4) The presence of antisocial personality disorder. *Id.*

The government suggests that the motive to escape liability for engaging in an $8 million COVID Fraud scheme is a powerful motive to malinger mental health symptoms in the context of a competency assessment. Being a non-violent crime, the defendant may very well expect that his charges will be dismissed if he is found unrestorable at some point in the future. *See* 18 U.S.C. §§ 4241(d)(2), 4246(d), Request for Leave to Dismiss Indictment, *United States v. McMullen*, No. 8:21-cr-382-SDM-CPT, Doc. 111 (M.D. Fla., Jun. 17, 2024). *But see United States v. McAfee*, No. 18 Cr. 425 (JFK), 2021 U.S. Dist. LEXIS 5760, 2021 WL 106268 (S.D. N.Y., Jan. 12, 2021).

The evidence that the defendant is malingering mental health deficits is strong. All the mental health professionals who have evaluated the defendant have suggested or opined that he is malingering. Defendant meets the definition of malingering by intentionally misrepresenting and exaggerating his symptoms to avoid entirely or receive diminished repercussions for his criminal behavior. *See United States v. Daughtry*, No. 23-11695, 2024 U.S. App. LEXIS 11760, *2, 2024 WL 2182343 (11th Cir., May 15, 2024). Here, the defendant has presented in a starkly different fashion depending upon the circumstances. Dr. Danziger observed the defendant presenting with "a very childlike demeanor, staring ahead, seemingly frightened, and entirely unable to provide me with even the simplest of historical information. The defendant was unable to tell me how old he was or his date of birth." Danziger report, ¶ 6. This presentation is in stark contrast to his observed behavior on other occasions: refusing

participation and articulating that it was based upon advice of counsel, provided MH staff background information about his education, reading the forms given him and inquiring whether "he would need to sign" which is what the form stated. *See* Abdelaal and Micono reports. The defendant was also observed interacting in an appropriate and coherent fashion with other inmates and watching television/playing board games. Abdelaal Report, pg. 6. All told, the defendant's presentation of significant impairment is selective, inconsistent, and contrary to any identified mental illness. The defendant is malingering symptoms of mental impairment and he is neither suffering from any significant or identifiable mental illness.

### C. There is No Mental Disease or Defect Rendering the Defendant Incompetent

There is no credible support for any claim that the defendant is suffering from "a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 2441(a). Dr. Abdelaal opined that "a diagnosis of Other Specified Personality Disorder is assigned at this time" along with malingering. Abdelaal Report, pg. 17. Dr. Abdelaal also opined that "defendant's presentation during the present evaluation . . . is inconsistent with an individual with Autism Spectrum Disorder, Intellectual Developmental Disorder (i.e., Intellectual Disability), or any other neurodevelopmental disorder." *Id.*, at 18. Dr. Danziger diagnosed the defendant with "Probable Malingering." Danziger Report, ¶ 4. Dr. Micono wrote an opinion of "Rule-Out" Malingering and Autism Spectrum Disorder.

Micono Report, pg. 13. Consequently, the defendant lacks a diagnoses that would support a mental incompetency claim under § 4241.[4]

### D.  The Defendant has a Factual and Rational Understanding of the Proceedings

A detailed analysis of the elements of an incompetency claim under § 4241 and *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975) is obviously complicated by the defendant's malingering. Nevertheless, an abundance of evidence establishes that the defendant has a factual and rational understanding of the proceedings against him. The government understands that the concept of "rational understanding" is difficult to define, and it means more than simply being oriented to time and place and having some recollection of events. *Dusky*, 362 U.S. at 402. Dr. Abdelaal opined:

> Regarding the prognosis pertaining to the defendant's ability to understand the proceedings and assist defense counsel, his prognosis is considered to be stable and that he should be able to understand the proceedings and assist defense counsel should he choose to do so. Further, as discussed above, the defendant has the capacity to understand the proceedings and assist defense counsel, and to my knowledge, there is no plausible explanation as to why that would have changed nor is there a mental illness to my knowledge that would account for the defendant's presentation across evaluations and during the present evaluation period. It is my opinion that the defendant's presentation and refusal to speak to defense counsel is intentional and volitional and not due to a mental illness . . .

Abdelaal Report, pg. 20. The strongest corroborative evidence of the defendant capacity is his repeated invocation of his consultation, or the specter of his consultation, with counsel. The defendant's repeated statements that "My lawyer told

---

[4]  The government respectfully disagrees that incompetence, within § 4241, can arise outside the realm of mental illness, as the statute requires "a mental disease or defect." See *United States v. Madison*, No: 6:17-cr-15-Orl-37LRH, 2020 U.S. Dist. LEXIS 244730, *9, 2020 WL 8461574 (M.D. Fla. Oct. 29, 2020) (stating, "[A] defendant can be competent to stand trial despite being mentally ill and similarly a defendant can be found incompetent to stand trial without being mentally ill.").

me not to sign anything without talking to him" and that he could not "answer any questions without my lawyer" in response to questioning are contextually appropriate and portray knowledge of the significance of the proceedings and role of counsel.

### E.  The Defendant is Able to Assist Properly in His Defense

This prong concerns the ability of a defendant to effectively participate in his defense by communicating effectively with his counsel. *Drope*, 420 U.S. at 171-72, *Cooper*, 517 U.S. at 356-57. "It is worth emphasizing that the *Dusky* standard refers to the ability of a defendant to communicate with his attorneys, not his willingness to communicate with his attorney." *United States v. Merriweather*, 921 F. Supp. 2d 1265, 1304 (N.D. Ala. 2013), quoted in *Madison*, No: 6:17-cr-15-Orl-37LRH, 2020 U.S. Dist. LEXIS 244730, *103. Stated simply, the defendant's ability to communicate with MH professionals, when he chooses to do so, as well as his 498 calls to his family during the period in which he was at MCC Chicago for competency restoration establishes the "ability" prong of the competency standard. As important, the defendant was able to navigate a complex, and detailed, TruPhone process to reach

his family members.   *See* transcript of hearing, July 10, 2024, *United States v. Edwards*, pgs. 15, and 19-24.

WHEREFORE, the government respectfully requests that this Court issue an order finding the defendant competent to stand trial.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   /s/ Kara M. Wick
      Kara M. Wick
      Assistant United States Attorney
      Florida Bar No. 0085578
      400 W. Washington Street, Suite 3100
      Orlando, Florida 32801
      Telephone: (407) 648-7500
      E-mail: Kara.Wick@usdoj.gov

By:   /s/ James D. Peterson
      James D. Peterson
      Trial Attorney
      Bar No. VA 35373
      United States Department of Justice
      1331 F Street N.W. 6th Floor
      Washington, D.C. 20530
      Desk: (202) 353-0796
      E-mail: James. D.Peterson@usdoj.gov

**U.S. v. JOSHUA EDWARDS**            **Case No. 6:22-cr-201-WWB-LHP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed using the CM-ECF

system and served upon counsel of record:

Andrew C. Searle, Esq.

<div style="margin-left: 40%;">

/s/ Kara M. Wick
Kara M. Wick
Assistant United States Attorney
Florida Bar No. 0085578
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
E-mail: Kara.Wick@usdoj.gov

</div>