UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:22-cr-201-WWB-LHP |
| ) | |
| JOSHUA EDWARDS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT JOSHUA EDWARDS'S**
**POST-HEARING COMPETENCY BRIEF**

Defendant Joshua Edwards ("Mr. Edwards"), by and through the undersigned counsel, hereby submits his post-hearing competency brief in compliance with the Court's Order dated July 11, 2024 (Doc. 212) and its Endorsed Order dated August 28, 2024 (Doc. 217).   In support thereof, Mr. Edwards states as follows:

**STATEMENT OF FACTS**

*A.    Competency Hearing*

On July 10, 2024, the Court conducted a competency hearing in this matter. *See* Docs. 209, 215.  At this hearing, the government presented testimony from two witnesses: (1) Yasmeen Abdelaal, Psy.D. ("Dr. Abdelaal") and (2) Task Force Officer Javier Mondejar ("Officer Mondejar").   Doc. 215 at 8-76, 77-96.   The

government also introduced Exhibit Nos. 1-8 and 10-15, which were admitted without objections.  *Id.* at 4-6; Doc. 213.  These exhibits included, *inter alia*, various competency reports, letters from Aslan International describing Mr. Edwards's position as of April 21, 2018, selected recorded calls made by Mr. Edwards during his incarceration at the Metropolitan Correctional Center in Chicago, Illinois ("MCC Chicago"), Facebook videos and podcast recordings depicting Mr. Edwards, and a transcript of Mr. Edwards's initial appearance before this Court on December 14, 2022.  Doc. 213.

### B.    *Testimony from Government's Expert Witness*

Dr. Abdelaal's testimony on July 10, 2024 included the following:

Dr. Abdelaal received her Doctor of Psychology in 2020, and had only practiced forensic psychology for three and a half years.  Doc. 215 at 9, 32.  She was not board certified and did three years of training as a student within the federal prison system.  *Id.* at 10, 32-33.  She has been formally employed by the U.S. Bureau of Prisons ("BOP") since September of 2022.  *Id.* at 32.

Dr. Abdelaal has predominately opined in the past that defendants are competent to proceed.  *Id.* at 35.  In fact, she has performed 100 to 150 competency evaluations, approximately half of which were conducted within a BOP setting.  *Id.* at 11, 35-36.  Of those BOP evaluations, she has only found two or three

individuals not competent to proceed after a period of restoration treatment. *Id.* at 35-36.

Dr. Abdelaal's first interaction with Mr. Edwards occurred on August 28, 2023 at MCC Chicago. *Id.* at 12, 14, 51. At this meeting, Dr. Abdelaal explained to Mr. Edwards her role and why he had been transported to the BOP facility. *Id.* at 14, 51. In response, Mr. Edwards refused to sign any of the BOP forms that Dr. Abdelaal presented to him, and he explained that he could not speak to her without his attorney. *Id.* As a result, Dr. Abdelaal was unable to conduct an actual interview and evaluation of Mr. Edwards. *Id.* at 14, 53. Moreover, she was unable to conduct any forensic testing on Mr. Edwards. *Id.* at 54. According to Dr. Abdelaal, each time she attempted to interview Mr. Edwards, he refused to speak and/or stated that he needed his attorney present. *Id.* at 14. In total, she only made three actual attempts to interview Mr. Edwards. *Id.* at 54.

Dr. Abdelaal based her opinions with regard to Mr. Edwards's competency on collateral sources of information. Specifically, she reviewed Mr. Edwards's inmate phone calls, she contacted his defense attorney, and she reviewed a prior competency evaluation report prepared by another BOP forensic psychologist, Jessica Micono, Psy.D. ("Dr. Micono"). *Id.* at 15. Dr. Abdelaal also attempted to contact Mr. Edwards's family members but was unable to speak with them. *Id.* She also relied on what the government described as "informal behavioral

observations" of Mr. Edwards. *Id.* at 18. These observations consisted of "very brief interactions with Mr. Edwards," lasting no more than two to five minutes, where Dr. Abdelaal observed him passing through his housing unit. *Id.* at 51-52. She made these minimal observations when she was entering or exiting her office, which was located in the same housing unit where Mr. Edwards was detained at MCC Chicago. *Id.* at 15-16, 18.

Dr. Abdelaal's opinions were also based on information she received from "several staff members" in the housing unit who claimed to have interacted with Mr. Edwards. *Id.* at 18-19, 53. These BOP employees merely reported that Mr. Edwards had engaged in the same or similar types of behavior previously observed by Dr. Abdelaal, i.e., he was able to answer initial questions but at some point shut down and refused to speak or interact further with the staff members. *Id.* Further, Dr. Abdelaal did not bother to document or record the names of the staff members with whom Mr. Edwards had these interactions. *Id.* at 53.

With regard to the inmate calls, Dr. Abdelaal primarily reviewed Mr. Edwards's conversations with his mother and sister. *Id.* at 47. In these calls, Mr. Edwards focused on bible verses and prayers. *Id.* at 47-48. In addition, his sister and mother gave him information and guidance on how to behave at MCC Chicago. *Id.* at 48. In fact, his sister and mother told him not to sign anything at MCC Chicago. *Id.* at 48. They also instructed him to be quiet and not speak to

4

anyone at the facility.  *Id.* at 49.  Mr. Edwards spoke in a childlike fashion when talking to his family members.  *Id.*

Dr. Abdelaal focused on the fact that Mr. Edwards was able to follow the prompts and instructions in order to complete the calls to his sister and mother. *Id.* at 23, 59.  She viewed this as evidence of his ability to function differently than how he presented to her, which she claimed supported her ultimate conclusion that Mr. Edwards was competent and malingering.  *Id.* at 23, 59.  She also believed that the inmate calls demonstrated Mr. Edwards's ability to identify himself, and engage in a coherent conversation with another person.  *Id.*  However, she also admitted that an incompetent person could identify themselves to family and interact with family, as Mr. Edwards apparently did in the inmate calls.  *Id.* at 60-62.  Additionally, she agreed that incompetent inmates at MCC Chicago make phone calls and are able to utilize the phone system there on a regular basis.  *Id.* at 59.

Significantly, Dr. Abdelaal did not receive or review any of the discovery in this case, including investigative reports or other materials from the government. *Id.* at 46.  In addition, she never reviewed or considered the pretrial services report for Mr. Edwards, which contained important information, including his mother's report to the Court that he suffered from a learning disability and autism.  *Id.* at 53.  Dr. Abdelaal conceded that these collateral sources of information that were

5

neither reviewed, nor considered, could have been relevant to her ultimate conclusion that Mr. Edwards was not competent to proceed.  *Id.* at 46-47, 3.

Dr. Abdelaal presented her opinion that Mr. Edwards did not have "a mental illness or a severe mental disease or defect that is preventing him from being able to understand the proceedings, make decisions about his case, or assist his attorney."  *Id.* at 13.  As an explanation for his eccentric behaviors and his inability to communicate with counsel, Dr. Abdelaal further concluded that Mr. Edwards was malingering, i.e., "he was appearing -- attempting to appear more impaired that [sic] he generally is, if there is any impairment."  *Id.* at 31.

Dr. Abdelaal admitted that one of the motivations for malingering in a criminal case is the desire on the part of the defendant to avoid consequences, including incarceration.  *Id.* at 40-41.  She also testified that it is very difficult to make an accurate assessment of a person's mental health status when malingering is present, because it is hard to distinguish feigned symptoms from real ones.  *Id.* at 41-42.  Along these same lines, she acknowledged that a person could be both malingering and suffering from a mental disease or disorder such as autism.  *Id.* at 42.

Dr. Abdelaal provided some of the symptoms of the autism spectrum disorder, including acting in a childlike fashion, lacking emotional maturity, behaving in a repetitive and rigid manner, having difficulty interacting with new

people, taking things literally, and having difficulty complying with rules. *Id.* at 36-37. She further testified that autistic individuals often repeat things and require a daily routine that is the same every day. *Id.* at 37-38. Further, autistic people can have a deep or keen interest in a specific subject or activity, including memorizing bible verses, while at the same time, having difficulty reading or understanding information about other topics. *Id.* at 38. She also acknowledged that autism could go undiagnosed and untreated for certain individuals, including people who are homeschooled or sent to unaccredited schools without a guidance counselor or a psychologist on staff. *Id.* Under these types of circumstances, autism can linger into a person's adulthood without being diagnosed or treated properly. *Id.* at 38. In these situations, an individual's behavior can be misunderstood by people who are around them. *Id.* at 40.

### C.    *Testimony from Government's Task Force Officer*

Officer Mondejar, who is not a psychologist, provided testimony about a single interaction he had with Mr. Edwards on the date of the defendant's arrest on December 14, 2022. *Id.* at 78-83, 94. Specifically, Officer Mondejar claimed that Mr. Edwards was able to understand instructions and commands during the arrest and booking process. *Id.* at 79, 81. The officer further testified that Mr. Edwards's primary concern was "what was going on and if his dad was ok." *Id.* at 79, 94.

Officer Mondejar explained that Mr. Edwards's father was confined to a hospital bed at the time of his arrest.  *Id.* at 78, 94.

After his arrest processing, Mr. Edwards was placed in a holding cell with his father.  *Id.* at 81-82.  Inside this cell, the father and son communicated with each other, but Officer Mondejar could not hear what they were saying.  *Id.*  Thereafter, Mr. Edwards had his initial appearance before this Court.  *Id.* at 82.  At this hearing, the officer witnessed Mr. Edwards being nonresponsive to his attorney and the judge.  *Id.*

Officer Mondejar's testimony also revealed that Mr. Edwards had previously gone through a federal arrest process when he was first arrested in September of 2020 for passport fraud allegations that were later dismissed.  *Id.* at 90-94.

## MEMORANDUM OF LAW

### A.   *Legal Standards*

The Due Process Clause of the Fifth Amendment prohibits courts from trying and convicting mentally incompetent defendants. *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975); *Pate v. Robinson*, 383 U.S. 375, 384-86 (1966); *United States v. Mason*, 52 F.3d 1286 (4th Cir. 1995).  The legal test for competency is whether the defendant has "***sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding***" and "a rational as well as factual

8

understanding of the proceedings against him." *United States v. Rahim*, 431 F.3d 753, 760 (11th Cir. 2005) (citation and internal quotation marks omitted) (emphasis added).   Moreover, pursuant to a statutorily prescribed standard, a person is incompetent to stand trial if "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d).  The preponderance of the evidence standard applies at a competency hearing.  *Id.*  This standard requires the factfinder to find "that the existence of [the] fact is more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970). The defendant's competency is an ongoing inquiry, and he must be competent at all stages of the trial. *Rahim*, 431 F.3d at 759.  The same competency standard applies to a defendant who wishes to plead guilty rather than stand trial. *United States v. Rodriguez*, 751 F.3d 1244, 1252 (11th Cir. 2014).

In making a competency determination, the Court may consider a number of factors, including the defendant's behavior in the courtroom, evidence of irrational behavior, and any prior medical opinions as to competence. *See Drope*, 420 U.S. at 180.  Similarly, the Eleventh Circuit has permitted the Court to consider, *inter alia*, a defendant's behavior and statements in open court and previous psychological evaluations. *See Rahim*, 431 F.3d at 759; *Watts v. Singletary*, 87 F.3d

1282, 1287 (11th Cir. 1996).  Evidence of incompetency need not be in the form of admissible evidence. *See Rahim*, 431 F.3d at 759.  In addition, "[b]ecause legal competency is primarily a function of [a] defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect." *Singletary*, 87 F.3d at 1288.

## B. *Burden of Proof in Establishing Competency*

Mr. Edwards asserts that the burden falls on the United States to show by a preponderance of the evidence that he is competent to stand trial. *See United States v. Teague*, 956 F.2d 1427, 1432 & n.10 (7th Cir. 1992); *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991); *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989); *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987); *but see United States v. Allen*, No. 10-80175-CR, 2011 U.S. Dist. LEXIS 108094, 2011 WL 4352793, at *58 (S.D. Fla. Aug. 26, 2011) (discussing the circuit split on the issue of which party bears the burden of proof as to competency but ultimately placing the burden on the government to prove competency because this "determination is not dependent upon the allocation of the burden since the evidence is not in equipoise").

In a relatively recent case in this district, the government conceded that the burden rested with it to prove, by a preponderance of the evidence, that a defendant's competency to stand trial had been restored. *United States v. Madison*,

No. 6:17-cr-15-Orl-37LRH, 2020 U.S. Dist. LEXIS 244730, 2020 WL 8461574, at *7-8 (M.D. Fla. Oct. 29, 2020), report and recommendation adopted, No. 6:17-CR-15-ORL-37LRH, 2020 U.S. Dist. LEXIS 244034, 2020 WL 7768460 (M.D. Fla. Dec. 30, 2020); *see also United States v. Cabrera*, No. 07-20760-CR, 2008 U.S. Dist. LEXIS 44724, 2008 WL 2374234, at *6 (S.D. Fla. June 6, 2008) ("[I]f there is an adjudication of incompetency, and the defendant is committed to the Attorney General . . . the burden of persuasion shifts; i.e., the court must find by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.").

###     C.     Consideration of Government's Expert Opinion

While the Court may consider expert testimony in determining competency, the Court is free to assign whatever weight the Court determines is due to such testimony. *Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005). In fact, it is "well-settled" that expert opinions on the issue of competency are not binding on the trier of fact, "if there is reason to discount it." *United States v. Izquierdo*, 448 F.3d 1269, 1279 (11th Cir. 2006) (citing *Strickland v. Francis*, 738 F.2d 1542, 1552 (11th Cir. 1984)).

## ARGUMENT

### A.    *Behavior And Demeanor*

Mr. Edwards's in-court behavior and demeanor has been consistent with that of an individual who has no ability to consult with counsel to a reasonable degree of rational understanding.  On December 14, 2022, at his initial appearance, Mr. Edwards was unable to understand the nature of the charges or the maximum penalties he was facing.  Doc. 14 at 5-6.  At this hearing, prior defense counsel expressed "difficulty explaining the charges to Mr. Edwards."  *Id.* at 6.  Before concluding the hearing, the Court addressed Mr. Edwards directly and attempted to obtain additional information.  *Id.* at 7.  Mr. Edwards was unable to provide any responsive answers to the Court.

In addition to the foregoing, Mr. Edwards's pretrial services report indicated that he had a learning disability, that he was homeschooled, and that he suffered from autism, which was never formally diagnosed.

Since the initial appearance, Mr. Edwards has appeared before the Court on numerous occasions and has continued to exhibit an inability to fully comprehend the proceedings.  Although Officer Mondejar testified about interactions with Mr. Edwards, which were inconsistent with how he has presented in Court, the officer's testimony was limited to observations that occurred on a single date in December of 2022.   Further, as noted above, Mr. Edwards had already gone

through the arrest process once before in September of 2020. As a result, he had some level of preparation for how to behave when he was arrested the second time in December of 2022. Additionally, Mr. Edwards was primarily concerned about his father who was confined to a hospital bed. An incompetent individual such as Mr. Edwards can handle the arrest process, which is simple and does not require an ability to fully comprehend the legal system or to meaningfully confer with counsel. Each year, throughout the country, numerous incompetent individuals have survived the arrest process only to be found not competent to proceed at a later date. In sum, Officer Mondejar's testimony does not carry the government's burden of demonstrating that the defendant's competency has been restored.

### B.    *Relevant Competency Evaluations*

#### 1.    *Evaluation By Dr. Micono*

On February 13, 2023, the Court entered an Order committing Mr. Edwards to a suitable BOP facility for a competency evaluation. Doc. 72. Mr. Edwards was ultimately sent to the Federal Correctional Institution in Englewood, Colorado ("FCI Englewood") where he was evaluated by Dr. Micono, a board-certified forensic psychologist employed by the BOP. On April 17, 2023, Dr. Micono issued a forensic evaluation report, which the Court received under seal. *See* Sealed Doc. 94; Doc. 97. At the competency hearing, the government introduced this same report into evidence. *See* Doc. 213-5.

Dr. Micono's evaluation consisted of several clinical interviews and observations of Mr. Edwards's behavior at the facility.  *Id.* at 1.  Specifically, Dr. Micono saw Mr. Edwards on March 15, 2023 (approximately one hour and 20 minutes), March 21, 2023 (approximately one hour and 30 minutes), March 22, 2023 (approximately two hours), and April 3, 2023 (two sessions – the first lasting approximately one hour and 30 minutes, and the second lasting approximately 15 minutes).  *Id.* at 2.  In addition, a doctoral psychology intern met with Mr. Edwards on other dates and times under Dr. Micono's supervision.  *Id.*

Dr. Micono also reviewed several court documents and collateral sources of information, including social media posts and podcast recordings from a "profile with the name Joshua Edwards."  *Id.*  In the social media posts, Mr. Edwards gave sermons and discussed Bible verses.  *Id.* at 5.  In the podcast recordings, it appeared that he was "reading out loud off of a cue card."  *Id.*

Moreover, Dr. Micono listened to several of Mr. Edwards's recorded inmate calls to his sister and mother.  *Id.* at 2, 8-10, 14.  In these calls, Mr. Edwards's sister and mother gave him instructions on how to answer questions during Dr. Micono's interviews and told him not to answer questions without his attorney. *Id.*  Based on these calls, it appeared that Mr. Edwards did not fully comprehend the situation he was in, as he repeatedly asked his sister and mother the same questions, despite his family providing him with answers.  *Id.* According to Dr.

14

Micono, Mr. Edwards's telephone calls to his family were "consistent with his presentation during evaluation sessions." *Id.* at 10.

Unlike Dr. Abdelaal, Dr. Micono conducted and attempted to conduct several different forms of psychological testing. *Id.* at 11-12. Mr. Edwards' performance and level of participation in these tests varied. *Id.* at 11-12, 15. In some instances, he scored in extremely low ranges. *Id.* Dr. Micono noted that Mr. Edwards's test results demonstrated potential evidence of feigning or exaggerating symptoms. *Id.* However, she also noted that:

> A primary problem resulting from a defendant's efforts to exaggerate and/or feign symptoms is the associated problem of assessing cognitive and mental health issues that might be present. That is, just because an individual is exaggerating or feigning certain mental health or cognitive problems, it does not preclude the presence of genuine mental health problems.

*Id.* at 14.

Dr. Micono concluded that there was evidence that Mr. Edwards may be suffering from autism spectrum disorder, which would significantly impair his ability to understand the nature and consequences of the proceedings, and would inhibit his ability to properly assist counsel in his defense. *Id.* at 16. Stated another way, Mr. Edwards's behavior during the interviews and observations conducted by Dr. Micono were consistent with someone suffering from autism spectrum disorder.

Mr. Edward's lack of formal education or social life, outside of his family unit, could also explain why this condition may have gone unidentified during his formative years. *Id.* at 15. As noted in Dr. Micono's report, Mr. Edwards was homeschooled and received a degree from an unaccredited religious institution. *Id.* at 4, 13-14. An internet search revealed that a diploma from this institution does not "certify levels of attainment, but rather accumulation of training credits." Id. at 4. Mr. Edwards also had no dating history and few friends. *Id.* at 15.

Ultimately, Dr. Micono concluded that Mr. Edwards was not competent to proceed, and she recommended that he be committed to a federal medical center for restoration treatment. *Id.* at 16.

On April 28, 2023, the Court held another hearing on Mr. Edwards's competency status. Docs. 95-96. At this hearing, the Court accepted Dr. Micono's evaluation and opinions, without objection from either party. Doc. 97. On this same date, the Court found by a preponderance of the evidence that Mr. Edwards was not competent to proceed and committed him to a BOP facility for restoration treatment. *Id.*

### 2.    *Restoration at MCC Chicago and Evaluation By Dr. Abdelaal*

Pursuant to the Court's commitment order (Doc. 97), Mr. Edwards arrived at MCC Chicago on August 24, 2023. Thus, it appears that for four months, Mr. Edwards's mental incompetency went untreated and unaddressed while he

16

waited at the Orange County Jail to be transported to a BOP facility for competency restoration.    As noted above, Dr. Abdelaal testified about her evaluation and Mr. Edwards's restoration treatment at MCC Chicago.

On January 25, 2024, Dr. Abdelaal issued a forensic evaluation report, indicating that Mr. Edwards was fit to proceed in this case.  *See* Sealed Doc. 121. The BOP also submitted under seal a certificate of restoration of competency to stand trial for Mr. Edwards.  *See* Sealed Doc. 123.

### C.    Additional Information Concerning Mr. Edwards's Behavior

Since the BOP's certification of competency restoration, Mr. Edwards has continued to present an inability to consult with his attorneys or meaningfully assist in his defense.  For example, on February 14, 2024, prior defense counsel attempted to confer with Mr. Edwards via a video-visit at the Orange County Jail. Doc. 128.  Within 30 seconds of this meeting, Mr. Edwards claimed he wanted another attorney but then got up from the video meeting and left without further conversation.  *Id.*

After his appointment on February 21, 2024, the undersigned made numerous attempts to confer with Mr. Edwards by visiting him in-person at the Orange County Jail and through the video visitation system at the jail.  Despite these efforts, the undersigned has never been able to meaningfully discuss this case with Mr. Edwards.

In more recent hearings, Mr. Edwards has also exhibited an inability to fully understand or acknowledge the Court when it has addressed the defendant directly.

### D.    Mr. Edwards Remains Not Competent To Proceed

The government has failed to meet its burden of establishing that Mr. Edwards's competency has been restored, that he now has the capacity to understand the consequences of a guilty plea, and that he currently understands the rights that he gives up by entering a plea. Such an understanding requires an ability to comprehend the federal sentencing guidelines, the advisory nature of the guidelines, and to be able to relate to counsel those facts which would be relevant to such determinations.

Should he proceed to trial, at a bare minimum, Mr. Edwards must have the ability to provide counsel with information necessary to develop all potential legal defenses, assist counsel in confronting the government's witnesses, and he must be in a position to make an intelligent determination as to whether or not he will testify, and, if he so decides, to testify coherently and with sufficient memory.

In his current state, Mr. Edwards has no ability to perform any of the aforementioned tasks or functions. As of this filing, he cannot even discuss the most basic aspect of his case, much less assist the undersigned in developing a defense theory. Furthermore, the undersigned does not even know how or where

to begin a discussion with Mr. Edwards on the pros and cons of going to trial versus entering a guilty plea. In sum, Mr. Edwards remains the same person he was at the beginning of this case – an incompetent individual who cannot meaningfully participate in the proceedings or assist his counsel.

This Court should rely on Mr. Edwards's in-court behavior, the observations of defense counsel, and the Court's own observations, all of which point to the conclusion that the defendant's competency has not been restored. Moreover, the Court should not accept Dr. Abdelaal's ultimate conclusion that Mr. Edwards is competent to proceed in this matter. First, the government's expert witness at the competency hearing was not board certified and has only been practicing forensic psychology for less than four years. Doc. 215 at 9, 32. In contrast, Dr. Micono is significantly more experienced and is board certified. Dr. Abdelaal also appears to have a track record for finding defendants competent to proceed. As noted, she has only ever found two to three individuals not competent to proceed after some period of restoration by the BOP, out of the approximately 50 to 75 competency evaluations she has performed in the federal prison system. *Id.* at 35-36. Thus, the statistics suggest some level of bias in favor of the government.

In addition, Dr. Abdelaal's evaluation of Mr. Edwards was inadequate. As discussed above, she only attempted a single substantive interview of him during

his intake at MCC Chicago on August 28, 2023.  *Id.* at 12, 14, 51.  In total, she only made three actual attempts to interview him, during the entirety of his restoration treatment period.  *Id.* at 54.  She claimed to have had meaningful observations of Mr. Edwards in his housing unit, but these observations were extremely brief and made in passing as she was entering and exiting her office.  *Id.* at 15-16, 18, 51-52.  Such minimal first-hand observations were insufficient for Dr. Abdelaal to meaningfully rely on in a competency evaluation.

She also relied on alleged observations made by other staff members at MCC Chicago.  *Id.* at 18-19, 53.  However, these other staff members were never identified by Dr. Abdelaal in her report.  Further, the unidentified staff members did not shed any new light on Mr. Edwards's issues.  Instead, they essentially confirmed the ongoing issue of him answering initial questions but then shutting down and being unable to meaningfully communicate further.

Dr. Abdelaal also failed to consider critical information, including investigative reports and the pretrial services report containing information from Mr. Edwards's mother, including his history of a learning disability and autism. *Id.* at 53.

Testimony from the government's expert revealed that Mr. Edwards's behavior is consistent with an autistic individual whose competency remains unrestored.  In the inmate calls, he spoke in a childlike manner to his sister and

mother, and relied on them for guidance on how to behave within the prison system. *Id.* at 48-49.   He also repeated bible versus and spoke in an unintelligible manner. *Id.* at 24, 47-48, 62.  All of these behaviors demonstrate that he is an adult individual suffering from untreated and undiagnosed autism.  *Id.* at 36-38, 56. Further, his refusal to interact with Dr. Abdelaal, his attorneys, and the BOP staff are consistent with an individual who has difficulty interacting with new people and situations outside of his normal routine.  This is yet another sign of autism.

Despite her ultimate conclusion, Dr. Abdelaal also observed signs of cognitive defects in Mr. Edwards as well as eccentric behaviors and characteristics consistent with an individual suffering from autism spectrum disorder. *Id.* at 56. She also opined that his behavior could suggest "schizoid or schizotypal disorder." *Id.*   These signs of legitimate mental health disorders were not sufficiently addressed or explained by Dr. Abdelaal in her evaluation or testimony.

Dr. Abdelaal acknowledged that a defendant's ability to discuss their case with their attorney, including discussing potential defenses and the benefits of a plea offer, is an important factor in assessing an individual's mental competency to proceed. *Id.* at 61-62.  Mr. Edwards's prior attorney reported to Dr. Abdelaal that he did not believe Mr. Edwards understood his questions when they spoke, and that the attorney had no ability to meaningfully communicate with the defendant. *Id.* at 50, 58.  Further, Dr. Abdelaal could not cite a single instance

where Mr. Edwards was able to communicate with his attorney in a meaningful way.  *Id.* at 58.  In fact, despite Mr. Edwards repeatedly stating that he could not speak without his attorney, Dr. Abdelaal only made two telephone calls to prior defense counsel.  *Id.* at 49.  She also never attempted to have Mr. Edwards's prior defense attorney participate in her interactions or attempted interviews with Mr. Edwards.  *Id.* at 58-59.  In sum, the testimony and evidence presented by the government failed to sufficiently demonstrate how Mr. Edwards's mental competency was treated and restored.

With regard to the additional report prepared by Jeffrey A. Danziger, M.D. ("Dr. Danziger"), it does not appear that the government placed significant weight or reliance on this report.  For example, Dr. Abdelaal did not rely on this report in making her findings.  *Id.* at 26, 70.  The government also elected not to call Dr. Danziger as a witness at the competency hearing.  *Id.* at 96.  As a result, this Court should not place any weight on Dr. Danziger's report.

In contrast, the Court should give considerable weight to Dr. Micono's report and opinions.  Dr. Micono's evaluation and report was a primary source of information relied on by Dr. Abdelaal.  *Id.* at 54.  Dr. Micono spent substantially more time observing Mr. Edwards in a clinical setting than Dr. Abdelaal was able to do.  *Id.* at 55.  Dr. Abdelaal also quoted extensively from Dr. Micono's report.  *Id.*  In fact, even Dr. Abdelaal testified that she does not disagree with Dr. Micono's

findings.  *Id.* at 55-56.  Accordingly, the Court should adopt Dr. Micono's conclusions, including her opinion that Mr. Edwards is not competent to proceed. Further, based on the foregoing, the government failed to establish that Mr. Edwards's competency has been restored since the time that Dr. Micono rendered her opinions in this case.

Additionally, the Court should reject the government's position that Mr. Edwards is malingering or feigning symptoms.  He has remained incarcerated since his initial appearance on December 14, 2022.  He is charged with non-violent fraud offenses and has no prior criminal history.  Thus, Mr. Edwards would have a strong case for pretrial release conditions under the Bail Reform Act, 18 U.S.C. § 3142.  He is not feigning symptoms to avoid a consequence, which is what constitutes malingering.  In fact, Mr. Edwards's persistent behavior has resulted in his prolonged incarceration for a year and nine months without any ability to seek pretrial release from the Court.  If he were truly a self-interested malingerer, he would have thrown in the towel long ago, and agreed to a competency finding so that he could proceed in this matter and ask the Court to set pretrial release conditions.

Mr. Edwards appears to suffer from autism that has gone untreated and undiagnosed throughout his life.  This condition explains his eccentric behavior patterns.  Although he has a degree from an unaccredited religious school, this

23

degree is not proof of a higher level of functioning.  As Dr. Abdelaal testified individuals with autism have the ability to demonstrate a deep interest in a single subject while not functioning in other areas of their lives.  Here, Mr. Edwards can memorize bible verses and prayers, but it appears that he has never been able to meaningfully confer with counsel about his case.  It is also common for autistic individuals to be anxious meeting new people, as well as repeating the same patterns and sayings.  Autistic people also take comments and statements of others literally.  At some point, Mr. Edwards likely heard from his family that he should not be discussing his case with others.  He took this information quite literally and has refused to address the Court, court-appointed psychologists, and his attorneys in any meaningful way.  As an autistic person, Mr. Edwards is easily influenced by his family, whom he has depended on for all his needs since childhood.  When he first meets a person, he can engage in rudimentary discussion.  However, once the conversation focuses on specifics about him or his case, he shuts down.  This dynamic, rooted in his autism, prevents him from being competent because it precludes him from conferring with counsel with a reasonable degree of rational understanding.  In his mind, discussing his case with anyone, including his counsel, is simply an impossibility.

The foregoing explains why he was able to speak with Officer Mondejar but then shut down in Court at his initial appearance. His condition also explains why

he was able to answer some basic questions from Dr. Abdelaal or other housing unit staff at MCC Chicago but eventually shut down and refused to speak.   In sum, the more persuasive evidence and inferences here demonstrate that Mr. Edwards's competency to participate in the legal proceedings against him has not been restored.

## CONCLUSION

WHEREFORE the Defendant, Joshua Edwards, requests that this Court enter an Order finding that he continues to be not competent to stand trial, pursuant to 18 U.S.C. § 4241.

Respectfully submitted on this 5th day of September, 2024.

*/s/Andrew C. Searle*
**ANDREW C. SEARLE, ESQ.**
Florida Bar No.  0116461

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on  September 5, 2024, I filed a copy of the foregoing with the Clerk of the Court via the CM/ECF system. I further certify that all parties to this case are equipped to receive service of documents via that system.

*/s/Andrew C. Searle*
**ANDREW C. SEARLE, ESQ.**
Florida Bar No.  0116461
**SEARLE LAW P.A.**
200 East Robinson Street, Suite 1150
Orlando, Florida 32801
Telephone: 407-952-0642
Email: andrew@searle-law.com
Attorney for Defendant

25