AF Approval  *VLD for NMA*                    Chief Approval ___CB__

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-201-AGM-LHP

JOSHUA EDWARDS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Gregory W. Kehoe, United States Attorney for the Middle District of Florida,

and the defendant, JOSHUA EDWARDS, and the attorneys for the

defendant, Andrew Searle, Esq. and Corey Cohen, Esq., mutually agree as

follows:

**A.    Particularized Terms**

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One and

Count Six of the Indictment.  Count One charges the defendant with

conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. Count Six

charges the defendant with visa fraud, in violation of 18 U.S.C. § 1546(a).

2.    Maximum Penalties

Count One carries a maximum sentence of 30 years'

imprisonment, a fine of up to $1,000,000 or twice the gross gain caused by the

Defendant's Initials  *JE*

offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than 5 years, and a special assessment of $100 per felony count.

Count Six carries a maximum sentence of 10 years' imprisonment, a fine of up to $250,000 or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

| First: | two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit bank fraud, as charged in the indictment; and |
|---|---|
| Second: | the defendant knew the unlawful purpose of the plan and willfully joined in it. |

Defendant's Initials _J E_                      2

The elements of Count Six are:

First:       the Defendant knowingly made a false statement under oath or penalty of perjury;

Second:      the false statement was with respect to a material fact;

Third:       the false statement was made in a document required by the immigration laws and regulations of the United States.

4.    Counts Dismissed

At the time of sentencing, the remaining count(s) against the defendant, Count Two and Count Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to Wells Fargo, First Home Bank, Bank of America, and the Small Business Administration.

6.    Sentence Recommendation

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced to a term of imprisonment of 36 months. The parties understand that such a recommendation is not binding on the Court and that if it is not accepted by

Defendant's Initials _J E_        3

this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for

acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 982(a)(2)(A) and 982(a)(6), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

Defendant's Initials  J E                5

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and

USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this

Defendant's Initials  J E          7

agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

9.    <u>Removal - Notification</u>

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

Defendant's Initials  _JE_                    8

**B.**    **Standard Terms and Conditions**

    1.    <u>Restitution, Special Assessment and Fine</u>

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials   <u>JE</u>          9

2.     Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.     Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.     Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to

make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    5.    <u>Financial Disclosures</u>

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to

Defendant's Initials  <u>J E</u>           11

the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make

Defendant's Initials  JE                    12

with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.     Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this

Defendant's Initials  J E                    13

office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront

Defendant's Initials _J E_                    14

and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials  JE                    15

12.     Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.     Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _3rd_ day of _February_, 2026.

                                             GREGORY W. KEHOE
                                             United States Attorney


_Joshua Edwards_
JOSHUA EDWARDS                               _____ for
Defendant                                    Kara M. Wick
                                             Assistant United States Attorney


_____                    _____
Andrew C. Searle                             Chauncey A. Bratt
Attorney for Defendant                       Assistant United States Attorney
                                             Deputy Chief, Orlando


_____
Corey Cohen
Attorney for Defendant


Defendant's Initials _J E_          16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-201-WWB-LHP

JOSHUA EDWARDS

## PERSONALIZATION OF ELEMENTS

Count One:

> First:     Did two or more persons, in some way or manner, agree to try to accomplish a common and unlawful plan to commit bank fraud, as charged in the indictment? and
>
> Second:    Did you know the unlawful purpose of the plan and willfully join in it?

Count Six:

> First:     Did you knowingly make a false statement under oath or penalty of perjury?
>
> Second:    Was the false statement made with respect to a material fact? and
>
> Third:     Was the false statement made in a document required by the immigration laws and regulations of the United States?

Defendant's Initials _JE_                    17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-201-WWB-LHP

JOSHUA EDWARDS

FACTUAL BASIS

Beginning on an unknown date, but at least as early as on or about April 3, 2020, and continuing through at least on or about September 17, 2020, in the Middle District of Florida, JOSHUA EDWARDS did knowingly and willfully combine, conspire, confederate, and agree with others to commit bank fraud: that is, to knowingly, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud a financial institution and to obtain any of the moneys, funds, credits, assets, and other property owned by, and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1344.

It was part of the conspiracy to defraud that, on or about April 6, 2020, JOSHUA EDWARDS, knowingly and with intent to defraud, submitted a materially false Paycheck Protection Program loan application (the "PPP Application") on behalf of ASLAN International Ministry, Inc. ("ASLAN"), to

Defendant's Initials  J E                    18

First Home Bank, a Florida Banking Corporation ("First Home Bank"), which
is a federally insured institution, in an attempt to fraudulently obtain funds from
the federal government.

## A. ASLAN International Ministry, Inc.

According to records obtained from the Florida Division of Corporations
("FDC") website, ASLAN was established for a religious purpose as a Foreign
Not For Profit Corporation in or around June 2018. In the initial FDC
application, Co-Conspirator 1 was listed as the registered agent, Chairman, and
President of ASLAN. JOSHUA EDWARDS was listed as the Vice President
and as a Director of ASLAN. FDC records show that the annual report filed on
April 3, 2020 changed ASLAN's registered agent to JOSHUA EDWARDS.

As described below, JOSHUA EDWARDS and his co-conspirator(s)
submitted a false and fraudulent PPP Application on behalf of ASLAN.[1] A

---

[1] The CARES Act is a federal law enacted on March 29, 2020, designed
to provide emergency financial assistance to the millions of Americans who
were suffering the economic effects caused by the COVID-19 pandemic. One
source of relief provided by the CARES Act was the authorization of up to $349
billion in SBA-guaranteed forgivable loans to small businesses through the
Paycheck Protection Program ("PPP"). In April 2020, Congress authorized
over $300 billion in additional PPP funding. The PPP allows qualifying small-
businesses and other organizations to receive loans with a maturity of two years
and an interest rate of 1 percent. PPP loan proceeds must be used by businesses
on payroll costs, interest on mortgages, rent, and utilities. The PPP allows the
interest and principal to be forgiven if businesses spend the proceeds on these
expenses within eight weeks of receipt and use at least 75 percent of the forgiven
amount for payroll.

Defendant's Initials _JE___                19

Secret Service investigation in 2020 following that submission showed that, in

the application, JOSHUA EDWARDS vastly overstated ASLAN's number of

employees and amounts of revenue, among other things. Interviews with the

property manager of ASLAN's alleged business location, nearby tenants, and

alleged employees confirmed that ASLAN was not operating, at least not as a

brick-and-mortar business, and had never brought in the amount of revenue that

was claimed in the PPP Application.

### B.    Submission of the Fraudulent PPP Loan Application

On April 6, 2020, JOSHUA EDWARDS electronically submitted an

SBA PPP Application on behalf of ASLAN. The application was DocuSigned

and dated on the same date by "Joshua Edwards" as the "Authorized

Representative" and "Owner" of the business. The email listed on the PPP

Application under "Signer Events" was josh.edwards@aslanintl.org. According

to the DocuSign Certificate of Completion, the IP address used was

99.61.105.183 (the "Home IP Address"), which was subscribed to "Josh

Edwards" through AT&T.[2]

The loan was submitted to First Home Bank in St. Petersburg, Florida.

The application sought $6,911,094.97 from First Home Bank to cover payroll,

---

[2] The AT&T subscriber information also listed the Home Address (as defined below)
and IJOSHEDWARDS@GMAIL.COM as the email.

Defendant's Initials  J E                    20

rent/mortgage interest, and utilities for ASLAN. The PPP Application indicated that ASLAN was a 501(c)(3) non-profit organization and had 486 employees with an average monthly payroll of $2,764,438.00. A canceled check was provided with the PPP Application, indicating the loan proceeds should be deposited into the Wells Fargo Bank account number ending in 6941 held in the name of ASLAN. The co-signatories for that Wells Fargo Bank account ending in 6941 were JOSHUA EDWARDS and Co-Conspirator 1. A copy of JOSHUA EDWARDS's Florida driver license was submitted with the PPP Application, which listed a residential address in New Smyrna, Florida (the "Home Address") as his address. As explained below, the PPP Application contained materially false and fraudulent representations.

### i.   False Payroll Expenses and Number of Employees

In the PPP Application, JOSHUA EDWARDS falsely claimed that ASLAN had average monthly payroll expenses of $2,764,438, when in truth and in fact, as JOSHUA EDWARDS knew, ASLAN's actual average monthly payroll expenses were significantly lower, or entirely nonexistent. JOSHUA EDWARDS also falsely claimed in the PPP Application that ASLAN had 486 employees, when in truth and in fact, as JOSHUA EDWARD knew, ASLAN's actual number of employees was significantly lower, or entirely nonexistent.

Defendant's Initials  J E          21

### ii.     False IRS Forms

Additionally, JOSHUA EDWARDS submitted with the PPP Application IRS Forms 941 for 2019 "Employer's Quarterly Federal Tax Return." The IRS Forms 941 showed ASLAN had 486 employees, with $11,022,480 in wages, tips, and other compensation for Quarter 1 of 2019; and that ASLAN had 481 employees, with $10,909,080 in wage, tips, and other compensation for Quarters 2, 3, and 4 of 2019. As part of the PPP Application, JOSHUA EDWARDS also submitted IRS Form 990 "Return of Organization Exempt from Income Tax," which showed ASLAN's total revenue for 2019 was $51,869,741.00 for 2019 and $48,235,824.00 for 2018. In truth and in fact, as JOSHUA EDWARDS knew, ASLAN's actual number of employees, and amount of compensation and revenue was significantly lower than reported in the IRS Forms, or entirely nonexistent. Neither the IRS Forms 941 nor Form 990 had ever been filed with the IRS.

### iii.     False Certification Regarding Use of Funds

JOSHUA EDWARDS also included in the PPP Application a false certification that "[t]he funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments," when in truth and in fact, as JOSHUA EDWARDS knew, the co-conspirators intended to use the PPP loan proceeds for unauthorized purposes, including for

a down payment of the attempted purchase of a multi-million dollar residence for themselves. Additionally, JOSHUA EDWARDS also included in the PPP Application a false certification that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate," when in truth and in fact, as the conspirators knew, the information provided in the PPP loan application and supporting documentation and forms was not true and accurate in all material respects.

### C.   <u>Disbursement of over $8.4M in PPP Funds</u>

After First Home Bank processed the PPP Application, it determined, based upon the supporting documentation provided by JOSHUA EDWARDS, that ASLAN would be eligible to receive $8,417,200.00 instead of the original amount requested. On May 13, 2020, a First Home Bank representative emailed JOSHUA EDWARDS at josh.edwards@aslanintl.org, stating that approval of the $8,417,200 loan was based on asking him to confirm certain information. The representative noted that "[u]pon confirmation…your loan will move to documentation and funding." On the same date, JOSHUA EDWARDS, responding in his capacity as "Trustee" of ASLAN, confirmed the requested information. Thus, the loan proceeded to documentation and funding. On May 14, 2020, JOSHUA EDWARDS, on behalf of ASLAN, Docusigned a

Defendant's Initials _JE_                23

certification for the SBA guaranteed loan (Loan Number 7590797009) to Aslan in the amount of $8,417,200.

On or about May 15, 2020, $8,417,200 was deposited by First Home Bank to ASLAN's Wells Fargo account ending in 6941, the co-signers of which were JOSHUA EDWARDS and Co-Conspirator 1. Prior to the deposit of those funds, the balance in the account was only $25.00, and there were no other deposits into the account during the relevant time frame. In June through September, 2020, the total amount of the funds was then incrementally transferred to various other bank accounts, the signatories of which were JOSHUA EDWARDS and/or his family members.

The total amount of the funds was then transferred from the Wells Fargo account ending in 6941 to another Wells Fargo account (the "Second Wells Fargo Account"), the signatories of which were JOSHUA EDWARDS and Co-Conspirator 1. Prior to that transfer, the balance of the Second Wells Fargo Account was only $525.00, and there were no other deposits into the account during the relevant time frame.

Next, the total amount of the funds was incrementally transferred to a Bank of America account (the "First BOA Account"), the signatory of which was a family member of JOSHUA EDWARDS ("Family Member 1"). Prior to those transfers, the balance of the First BOA Account was only $100, and there

Defendant's Initials _JE_                24

were no other deposits into the account during the relevant time frame. After that, the total amount of the funds was incrementally transferred to a second Bank of America Account (the "Second BOA Account"), the signatory of which was Family Member 1. The Second BOA Account was opened on June 23, 2020, and had a balance of only $100 prior to those transfers.

Then, a portion of the funds, in the total amount of $2,718,540 was incrementally transferred to a third Bank of America account (the "Third BOA Account"), the signatory of which was Family Member 1. Prior to those transfers, the balance of the Third BOA Account was only $100, and no other funds were deposited into the account during the relevant time frame. Finally, on or about July 29-30, 2020, $868,250 was transferred from the Third BOA Account to the Royal Bank of Canada account ending in 6874 in the name of another family member of JOSHUA EDWARDS ("Family Member 2"), and $868,250 was sent to the First American Title Insurance Company for the attempted purchase of a residence in Orlando, Florida valued at over $3.7 million. Family Member 2 was the only listed party on the purchase contract of that residence.

On September 16, 2020, three federal seizure warrants were issued, and the United States was able to recover funds in the total amount of $8,417,261.38

Defendant's Initials ___JE___          25

by seizing the funds that remained in BOA Account #2, BOA Account #3, and
the funds held by the title company.[3]

**D.** <u>**Search Warrant and Flight**</u>

On September 8, 2020, Secret Service agents left a door hanger on the
door of the Home Address where JOSHUA EDWARDS, Co-Conspirator 1,
Family Member 1, and Family Member 2 resided. The door hanger asked the
family to reach out to Secret Service agents. Records from a hotel in Winter
Garden, Florida show that JOSHUA EDWARDS and his family stayed at a
hotel in the days following the Secret Service visit to their home. JOSHUA
EDWARDS paid for a hotel room on September 9-10, 2020, and Co-
Conspirator 1 paid for rooms from September 11-17, 2020.

On September 17, 2020, Secret Service agents executed a federal search
warrant on the Home Address. No persons were located there during the
execution of the search warrant and the only registered vehicle associated with
the Home Address (2020 Mercedes model 350 bearing a Florida license tag (the
"VEHICLE")) was also not present. Based upon the state of the residence
during the search (missing clothing in closets, computer towers missing in the

---

[3] These funds were forfeited in a related civil action in the Middle District of Florida,
Case No. 20-CV-02269-ORL.

Defendant's Initials  J E          26

office with power cords remaining, and the refrigerator contents almost emptied), the occupants had fled prior to the execution of the search warrant.

Also on September 17, 2020, agents were notified, based on Florida Department of Transportation SunPass transponder readers, that the VEHICLE was traveling north. Around 9:00PM that night, FDLE notified agents that the VEHICLE had been stopped by law enforcement on I-75 northbound for a speeding violation. JOSHUA EDWARDS, Co-Conspirator 1, and Family Members 1 and 2 were all found to be inside the Vehicle. JOSHUA EDWARD was driving the vehicle, and Co-Conspirator 1 was in the front passenger seat with a laser printer on his lap.

On the front passenger floorboard of the Vehicle, officers saw an open faraday bag containing what appeared to be multiple laptops and tablets. In the rear passenger seat were two clear garbage bags containing what appeared to be shredded paper documents. In the rear cargo area, multiple suitcases were stacked from floor to the ceiling, along with a document shredder. The remainder of the vehicle was packed tightly with backpacks and luggage. A receipt was later recovered from the vehicle that showed the document shredder had been purchased by JOSHUA EDWARDS on September 8, 2020, about two hours after Secret Service agents had visited the Edwards family residence.

Defendant's Initials  J E                    27

Also located in the vehicle was the Secret Service door hanger left on the door of the Home Address on September 8, 2020.

### E.    JOSHUA EDWARDS'S False Visa Application

On or about June 14, 2021, JOSHUA EDWARDS signed and submitted, under oath and penalty of perjury, Form I-485, Application to Register as Permanent Resident or Adjust Status, in9 support of his visa application. He falsely stated on the form that he had never been arrested, cited, charged or detained for any reason by any law enforcement official. In truth and in fact, and as JOSHUA EDWARDS knew, he had been arrested, charged, and detained by a law enforcement official on or about September 17, 2020, along with Co-Conspirator 1 and Family Members 1 and 2. This false statement related to a material fact in the Form I-485, an application and document required by the immigration laws and regulations of the United States.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

Defendant's Initials _JE_          28